MUNSEY et al. v. MARNET OIL & GAS CO. et al. (No. 7704.)

(Court of Civil Appeals of Texas. Dallas. Oct. 20, 1917. Rehearing Denied Dec. 22, 1917.)

1. MINES AND MINERALS ⬾77—ACTION TO FORFEIT LEASES—INSTRUCTION.

In an action by the lessors of oil lands to cancel the leases and for damages, the charge that the law looks with disfavor on and discourages the forfeiture of the rights of parties, etc., was improper as calculated to prejudice plaintiffs' asserted right to forfeit the leases by conveying the suggestion that the right of forfeiture is regarded unfavorably.

2. MINES AND MINERALS ⬾73½ — CONVEYANCE OF MINERALS ON CONDITION SUBSEQUENT—PERFORMANCE.

Where, by agreements, all oil, gas, coal, and other minerals beneath the land covered were sold and conveyed, subject to a condition subsequent as to locating and bringing oil to the surface, which was complied with, on such compliance the grants became absolute for the purposes contemplated for 20 years, or as long as oil in paying quantities could be produced, according to their terms.

3. MINES AND MINERALS ⬾78(1)—OIL LEASES—DUTY OF LESSEES.

Where the only consideration moving to the grantors of minerals, other than an eighth interest in the oil which might be produced and saved, was $5, the real consideration was the one-eighth portion of the oil reserved by the grantors when delivered in the pipe line, and it was the duty of the grantees by implication continuously to operate the wells as contemplated.

4. MINES AND MINERALS ⬾77—PURCHASE OF OIL LANDS—SUCCESSION TO RIGHTS OF LESSORS AS TO FORFEITURE BY ABANDONMENT.

In an action to cancel oil leases and for damages, the instruction that, in determining whether there had been a forfeiture of the leases by abandonment, the jury could consider only the circumstances tending to establish the issue arising since plaintiffs' purchase of the land, was erroneous; all facts and circumstances and the acts of the parties and their agents properly

---

⬾For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

admissible under the pleadings should have been admitted and presented to the jury without limitation, for, when plaintiffs acquired the land and the interest of the lessors in the leases, any rights inuring to the lessors inured to plaintiffs, the leases declaring that their conditions should extend to the successors of the parties.

5. WORDS AND PHRASES—"ABANDONMENT."

"Abandonment" is the relinquishment of a right.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Abandonment.]

6. MINES AND MINERALS ⊚══77—OIL LEASE—WAIVER OF RIGHT TO FORFEITURE AND RE-ENTRY—ESTOPPEL.

One entitled to forfeiture and re-entry may waive such right, or be estopped by his own conduct from asserting it.

7. MINES AND MINERALS ⊚══77—OIL LEASES—ACTION TO CANCEL OR FORFEIT—EVIDENCE.

In an action to cancel oil leases, any fact properly evidencing the intention of plaintiffs' predecessors in ownership of the land to waive any right of forfeiture of the leases was admissible on the issue of waiver.

8. TRIAL ⊚══244(1) — INSTRUCTIONS — EMPHASIZING CASE OR DEFENSE.

Though, in a general way, either side is entitled to a full affirmative presentation of its case or defense, and a special grouping of facts in certain cases, any repetition or emphasis thereof that essentially gives such case, issue, or defense prominence, is erroneous.

9. MINES AND MINERALS ⊚══77 — ACTION TO FORFEIT OIL LEASES—SUBMISSION OF ISSUE—INTENTION.

In an action to cancel oil leases on the ground of forfeiture, the court properly submitted the issue of defendant lessees' intention voluntarily to abandon the grants.

10. MINES AND MINERALS ⊚══77—FORFEITURE OF OIL LEASES—INTENTION.

The intention of oil lessees to forfeit the grants to them by voluntary abandonment is to be found by the jury from a consideration of the nature and extent of the undertaking, the conduct of the parties, and what they did or failed to do; and the jury need not find that a special mental conclusion was reached by the lessees.

11. MINES AND MINERALS ⊚══77—ACTION TO CANCEL LEASES—INTENTION TO ABANDON—QUESTION FOR JURY.

In an action to cancel oil leases for voluntary abandonment, whether the lessees intended voluntarily to abandon *held* for the jury under the evidence.

12. MINES AND MINERALS ⊚══77—ABANDONMENT OF OIL LEASES—INTENTION—EVIDENCE.

Cessation of work by the lessees of oil lands is a fact to be considered in determining their intention voluntarily to abandon their leases.

13. APPEAL AND ERROR ⊚══1064(1)—HARMLESS ERROR—INSTRUCTION.

In an action to cancel oil leases for forfeiture by abandonment, the court charging that the intention to abandon must have been voluntarily formed by defendant lessees, the use of the word "voluntarily" was at most harmless to plaintiffs.

14. MINES AND MINERALS ⊚══78(7) — ACTION TO CANCEL OIL LEASES—INSTRUCTION—"ORDINARY CARE."

In an action to cancel oil leases for forfeiture by abandonment, in its charge on the issue of damages, the court improperly instructed that it was defendant lessees' duty to exercise ordinary care in the operation of the wells, since "ordinary care" refers to the duty one person owes another in the conduct, management, or use of any agency, utility, property, or thing, etc., as affecting his personal safety or property

rights, and has nothing to do with covenants to be performed absolutely.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Ordinary Care.]

15. APPEAL AND ERROR ⊚══1064(1)—HARMLESS ERROR—INSTRUCTION.

The use of the term was harmless to plaintiffs.

16. MINES AND MINERALS ⊚══78(1) — OIL LANDS—FAILURE TO OPERATE WELLS—DAMAGES.

Where oil wells were seized by the bankruptcy court, the lessees of the lands, on showing that they made reasonable effort to secure possession from the court, or to operate under its direction, could not be held liable in damages to the lessors' successors during the period for failure to operate under the leases or grants.

17. MINES AND MINERALS ⊚══77—ACTION TO CANCEL OIL LEASES—EVIDENCE.

In an action by the lessors' successors to cancel oil leases, it was not error to permit proof of the facts in reference to the bankruptcy.

18. APPEAL AND ERROR ⊚══742(4) — ASSIGNMENTS OF ERROR—STATEMENT IN SUPPORT.

If bill of exceptions to overruling of objection to a question to a witness does not, as it should, disclose what the answer was, if the question was in fact answered, etc., the statement in support of the assignment of error should.

19. MINES AND MINERALS ⊚══77—ACTION TO CANCEL OIL LEASES—EVIDENCE.

In an action to cancel oil leases on the ground of forfeiture by abandonment, the court properly admitted in evidence the amount of money spent on the oil wells by defendant lessees after the property was released by the bankruptcy court.

20. MINES AND MINERALS ⊚══77—FORFEITURE OF LEASE—EVIDENCE OF TITLE—IMMATERIALITY.

In an action to cancel oil leases, where a certain judgment could only prove title to a tract of land which was not in issue, such judgment was inadmissible in evidence.

21. MINES AND MINERALS ⊚══77—CANCELLATION OF LEASE—EVIDENCE.

In an action to cancel oil leases for forfeiture by abandonment, an injunction restraining one of the co-owners from selling any of the product of the wells, but which in no way interfered with the operation of the wells by either defendant, was improperly admitted in evidence.

Appeal from District Court, Navarro County; H. B. Daviss, Judge.

Suit by E. W. Munsey and others against the Marnet Oil & Gas Company and others. From judgment for plaintiffs, they appeal. Judgment reversed, and cause remanded.

Dexter Hamilton and Callicutt & Johnson, all of Corsicana, for appellants. W. J. McKie and Richard Mays, both of Corsicana, for appellees.

RASBURY, J. This suit was instituted by appellants for the purpose of canceling certain oil leases and for damages. Upon trial by jury, verdict was against cancellation of the leases, but for damages, followed by similar judgment, from which this appeal is taken.

The following facts are not disputed: In the year 1898 the owners of adjoining tracts of land in Navarro county comprising ap-

proximately 158 acres entered into written agreements, one with W. H. Staley and one with Carmody and Davis, in reference to any minerals beneath the land. The agreements are similar. By the terms thereof all of the oil, gas, coal, and other minerals beneath the land were sold and conveyed to the grantees, who were to have and hold same on condition that drilling for oil, etc., was begun and diligently prosecuted within 30 days from the grant. If oil or other mineral was discovered within the said period, such grant was to continue in force for 20 years, or so long as oil could be produced in paying quantities, in which event the grantees were to bore not less than six additional wells within one year from the grant, and six in the second year, should the paying wells justify the expenditure. For the purposes indicated, grantees were given the right of ingress and egress upon the said lands for the purpose of laying pipe, for drilling, and for transporting oil. The grant declared it evidenced a conveyance of property and not a mere franchise, and that the "conditions" thereof should extend to the heirs, executors, and administrators of the parties thereto. The consideration of the grant was the free delivery in a local pipe line to the credit of the grantors of one-eighth of the oil produced and saved from said premises. There are other provisions in the leases, which are omitted because immaterial to any issue presented in the case. Development of the mineral resources of the land under the provisions of the leases and to the apparent satisfaction of the grantors therein and their successors were had for a period of years. Mutations in the ownership of the leases, unnecessary to detail, placed such ownership on February 11, 1911, three-fourths in appellee Marnet Oil & Gas Company, and one-fourth in W. H. Staley, who was in charge thereof for himself and said Marnet Oil & Gas Company. The development of the minerals and the ownership of the leases so stood when appellants in July, 1912, acquired the fee to the land and the one-eighth portion of the minerals produced and reserved by the original lessors.

In May, 1913, thereafter, appellants commenced the present suit for the purposes already detailed. The case was tried October 11, 1915, and the evidence adduced by appellants upon trial tended to show that appellees had abandoned the operation of the wells upon the land about October, 1911, and were by reason thereof permitting the oil beneath appellants' land to be drained by other wells on land adjacent thereto and derived from the same strata, and that appellants had after their purchase promptly and repeatedly demanded that the wells be operated, which demand appellees declined to comply with, and that had the wells been operated during the period they were idle appellants would have received therefrom approximately $200 per annum. Appellees' evidence tended to show that from the incipiency of the leases

numerous wells were sunk on the lands and profitably operated to the satisfaction of those owning the lands, but that when appellants acquired the lands and the oil interests of former owners the supply had naturally decreased and the machinery or equipment considerably run down, and that when appellants within a short time after their purchase demanded that the wells be pumped they agreed to do so as soon as certain necessary machinery which had been ordered should arrive, but that before the machinery arrived and on January 10, 1913, W. H. Staley became a voluntary bankrupt, whereupon his trustee not only assumed possession and control of Staley's interest in the oil leases, but of the entire property, and refused to operate same until in November, 1913, at which time appellees made the necessary improvements, cleaned out the wells, and commenced operation, after which time appellants' interest in the oil produced was delivered to the local pipe line in accordance with the leases.

Due to the fact that we have reached the conclusion that it is our duty to reverse the case, we have for obvious reasons of propriety stated only in a general way the facts which the evidence tendered by the respective parties tended to prove. Any further reference to the facts necessary to a disposition of the issues will be had in considering such issues, and issues as such will be discussed without reference to the assignments of error.

[1] The jury was told by the court:

"That the law looks with disfavor upon and discourages the forfeiture of the rights of parties, and declares that before a forfeiture will be declared the evidence on which such forfeiture is predicated and sought must preponderate in favor of the forfeiture."

Appellants contend that the charge was error, since forfeiture is a salutary remedy and is not, when the facts warrant it, without favor before and discouraged by law, and that the language used was prejudicial and upon the weight of the testimony. That forfeitures arising as matter of law upon statutes and contracts between private persons are not regarded with favor, and that equity will, when it is equitable to do so, relieve against them, is a rule declared so often by text-writers and decisions as not to require the citation of authority. Whether, when forfeitures is a fact issue, as distinguished from one arising upon statute or contract upon fixed contingencies, the jury should be told that such remedy is looked upon with disfavor, is, it seems to us, a rule of doubtful expediency. That equity abhors forfeitures is not because forfeitures in every case would be inequitable, but because equity prefers, when it is equitable to do so, to preserve to parties valuable property rights against loss in such manner, if the loss caused the particular default, as can be compensated for in other ways. The pleading and proof in the case at bar fairly presented and raised the issue of forfeiture

based upon abandonment of the rights granted by the leases. While the language used by the able trial judge cannot correctly be said to be on the weight of the evidence, it was, we believe, calculated to prejudice the right asserted to forfeit by conveying to the jury the suggestion that, unlike all other proceedings, the one being tried was regarded in an unfavorable light. Incidentally, it is ruled by some authorities, in reference to grants similar to the one involved in the instant case, that, where the grant is in the hope and expectation of pecuniary profit from mineral development, the same reasons do not exist for the application of the rule that equity abhors forfeitures for the reason that forfeiture when the grantee is guilty of laches in that respect is but equity. 12 R. C. L. 873.

[2] Appellees, while maintaining that the charge was correct, assert the counter proposition that the rights acquired by appellees by the leases detailed are in no event subject to forfeiture, for the reason that the grants evidenced in law an absolute sale of all minerals beneath the surface of the land. We agree that the leases did by their terms evidence an absolute sale of all minerals beneath the land, subject to the condition subsequent contained therein in relation to locating and bringing oil to the surface, which we have shown was complied with, and whereupon the grants became absolute for the purposes contemplated by the parties for a period of 20 years, or as long as oil in paying quantity could be produced. Benavides v. Hunt, 79 Tex. 383, 15 S. W. 396; Southern Oil Co. v. Colquitt, 28 Tex. Civ. App. 292, 69 S. W. 169; Texas Company v. Daugherty, 107 Tex. 226, 176 S. W. 717; Fisher v. Crescent Oil Co., 178 S. W. 905.

[3] We do not agree, however, after the condition subsequent in reference to the development of paying wells upon the property had been complied with, that all obligation on the part of the grantees ended, and that an abandonment of the operation of the wells, which in substance is appellants' contention, might not, depending upon all the facts and circumstances surrounding such claimed abandonment, constitute grounds for forfeiture and re-entry. The only consideration moving to the grantors in the leases, other than the one-eighth interest in the oil which might be produced and saved, was $5. Without going to the extent of holding that such sum would in no case constitute a sufficient consideration, it is, we believe, correct in this case to say that obviously the parties to the grant, in view of its provisions, did not regard such sum the real consideration for the grant, but, on the contrary, indulged the hope and expectation that oil in paying quantities would be found beneath the surface of the land, and, when so found, the one-eighth portion thereof reserved by the grantors when delivered in the pipe line to the

credit of the grantees in order that it might be marketed was to constitute the real consideration for the grants. Such being the purpose and intention of the parties, it was the duty of the grantees to continuously operate the wells in the manner contemplated by the undertaking; and if it cannot be said that the duty to continuously develop and produce the lands' mineral resources in a reasonably diligent manner, after discovery thereof in paying quantities, is not expressly provided for by the terms of the grant, then such duty unquestionably arises by implication. Such implication arises upon the provisions in the leases reserving to the grantees the right of ingress and egress over the surface land, the right to lay pipes for both production and transportation of all minerals when discovered and produced, and the duty imposed upon grantees to deliver to grantors in a pipe line their share of oil and to pay for same quarterly. These provisions suggest without discussion the intention of the parties, and what they contemplated. Clearly, it cannot be said that such provisions contemplate the operation of the wells at the will of the grantees, any more than that the right to operate by grantees could be divested at the will of grantors. Fisher v. Crescent Oil Co., supra, in our opinion presents a correct discussion of the mutual obligations of the parties under such contracts or leases after the discovery of oil in paying quantities.

[4, 5] The court instructed the jury, in substance, that in determining whether there had in fact been a forfeiture by abandonment they could in that connection consider only the facts and circumstances tending to establish that issue arising after appellants' purchase of the land. It is contended, and we believe correctly, that such limitation was error. All the facts and circumstances and the acts of the parties and their agents properly admissible under the pleading should have been admitted in testimony and presented to the jury without limitation, for the reason that, when appellants acquired the land and the interest of the grantors in the oil leases, any rights inuring to such grantors thereunder in like manner inured to appellants. The grant declares that its "conditions" shall extend to the heirs, executors, administrators, and assigns of the original parties. As a consequence, if appellees, prior to the appellants' purchase, had in fact so acted as to satisfy the jury on the issue of abandonment, such abandonment inured to the benefit of and could be asserted by appellants; or if the conduct of appellees, partly during the ownership of appellants' vendors, and partly during the ownership of appellants, was sufficient to satisfy the jury on such issue, appellants could rely thereon. Otherwise it might result that a complete abandonment had resulted, and yet, because of a change of ownership, those forfeiting could reclaim a right wholly lost. "Abandon-

ment" is the relinquishment of a right, in the instant case a right for a period of years to remove minerals from beneath certain lands. Phillips v. Watkins, 90 Tex. 195, 38 S. W. 274, 470. If such right is in fact relinquished during the ownership of one person, it is none the less so when such person conveys to another, since a right so lost cannot by mere transfer of property be revived.

[6, 7] There is, however, the other rule, of equal force and dignity, that one entitled to forfeiture and re-entry may waive such right or be estopped by his own conduct from asserting such right. Benavides v. Hunt, supra. And any fact properly evidencing the intention of former owners to waive any right of forfeiture would be admissible on that issue.

The court in substance instructed the jury that, before the grant could be forfeited, it must appear from the evidence that appellees intended to voluntarily abandon same and in that connection further instructed them that even though the wells were not operated for a short time abandonment would not result unless the intention to abandon existed. Complaint is made that intention is not a proper issue, that the charge is restrictive in that it in effect withdraws from the jury the issue of intention, if proper, based on the time appellees failed to operate the wells, that it emphasizes the issue of intention by requiring the jury to find that appellees voluntarily abandoned the property, and repeats and accentuates that issue in such manner as to give it undue prominence.

[8] In reference to the manner of submitting the issue to the jury, it is sufficient to say that while in a general way either side is entitled to a full affirmative presentation of the case or defense, and a special grouping of facts in certain cases, any repetition or emphasis thereof that essentially gave such case, issue, or defense prominence would be erroneous, and the rule should be observed upon another trial.

[9-12] The court did not err in submitting the issue of intention, for when it is claimed that a right has been lost by abandonment and upon which forfeiture is sought the issue of intention can rarely, if ever, be said to be absent. Such intention, of course, is to be found by the jury from a consideration of the nature and extent of the undertaking, the conduct of the parties, and what they did do or failed to do in that respect. The rule does not mean that the jury shall find that a specific mental conclusion was reached by the person so charged to so abandon the right, since such a finding could never find a basis in the testimony, except by admission or confession. Nor do we believe the charge of the court susceptible of such construction as claimed by appellants. Failure to operate the wells for a given period might or might not furnish the basis for a finding that the intention to abandon was established alone by such failure, depending upon what brought about cessation. Again, cessation for a period might afford no basis whatever to support such a finding. In the instant case, we incline to the opinion that the evidence presented an issue for the jury, and that that portion of the court's charge which, in effect, told the jury that the failure to operate would not support a finding of intention to abandon, was incorrect. In Benavides v. Hunt, supra, the court did hold that temporary cessation of work, under the conditions shown by the evidence, would not establish abandonment. But whether the cessation in this case was temporary was excusable, or evidenced an intention to abandon the rights secured by the leases, was for the jury to determine under appropriate charge. Cessation of work is a fact to be considered in determining intention. It might or it might not afford basis for a finding of abandonment. In this case, appellants' evidence on that issue was at least such as not to warrant the restriction imposed by the charge.

[13] The contention that the court erred when he, in effect, told the jury that the intention to abandon must be voluntarily formed, is, in our opinion, without material merit. As we have said, intention is a mental process evidenced by outward acts, conduct, and declarations, and is necessarily voluntary, for it is hard to conceive of involuntary mental action, save in cases of hypnotism or mesmerism, concerning which we confess entire ignorance. The use of the word, at most, was harmless. The reason of its use was perhaps due to the claim of appellees, which will appear at another point, that the wells were not operated over a considerable period for reasons beyond their control, and for that reason their failure to operate was involuntary.

[14, 15] The court on the issue of damages instructed the jury that it was appellees' duty to exercise "ordinary care" in the operation of the wells on the lands granted, which is assigned as error on the ground that such issue was not raised by the pleading or the evidence. The term, as used, is in our opinion a misnomer. "Ordinary care" as applied and discussed generally refers to the duty one person owes another in the conduct, management, or use of any agency, utility, property, or thing, etc., as affecting his personal safety or property rights and has nothing to do with covenants to be performed absolutely. While we consider the use of the term inappropriate and one calculated in a limited way to mislead the jury with reference to appellees' obligation to continuously operate the wells, it would, we believe, in the absence of other grounds, constitute insufficient reasons for reversal.

[16] The court restricted appellees' recovery of damages as for oil that should have been produced to the period from date of

appellants' purchase in July, 1912, to the time the property was taken in charge by the bankruptcy court. It appears from the evidence that Staley, who, as we have shown, owned a one-fourth interest in the leases, voluntarily admitted bankruptcy. The bankruptcy court, in adjusting Staley's affairs, not only assumed control of his interest in the oil wells, but that of Marnet Oil & Gas Company's as well, and refused to permit the latter to improve or operate same during its control thereof. If, correctly or incorrectly, the bankruptcy court seized the interest of Marnet Oil & Gas Company in the wells, as well as that of Staley, the property was in the custody of the law, and any attempt to interfere with such possession would have been in contempt of court. As a consequence, appellees, upon a showing that a reasonable effort was made to secure possession from the bankruptcy court or to operate same under direction of the said court, could not be held liable in damages during such period for failure to operate under the terms of the contract.

[17] Under the conditions recited above, it also was not error, as asserted in another place, to permit proof of the facts related in reference to bankruptcy.

A number of issues are presented which arise upon the admission and exclusion of evidence, concerning which we have the following to say:

[18] 1. The witness Witherspoon was asked, in effect, if a dry well in proximity to a producing well was not to be accounted by certain earth formations beneath the surface, to which appellants objected, and which objection the court overruled, and which action of the court is assigned as error. The bill does not disclose what the answer was, if it was in fact answered; nor does the statement accompanying the assignment disclose where, if answered, it may be found in the testimony. If the bill does not, as it should, contain all the proceedings complained of, the statement in support of the assignment should. For the reason stated, the assignment will not be considered.

2. The bill of exception concerning evidence tending to show amount of oil produced on waterworks property, which adjoins appellants' property, is insufficient in nearly every respect and will not be considered.

3. There is nothing in the bill concerning the exclusion of the testimony of Gage, concerning the oil production on the Hickey tract, which evidences error in its exclusion. It may be, conditions and surroundings being similar, the production of a given tract would be evidence of the probable production of an adjoining tract. Such conditions are not disclosed by the bill we are discussing.

[19] 4. We think the court properly admitted in evidence the amount of money spent upon the wells by appellees after the

property was released by the bankruptcy court. As we have attempted to say at another point, all the acts of the parties are to be considered by the jury in determining the issue of intention.

[20] 5. We cannot see the materiality of the judgment rendered in case of Fox v. Robbins, as relates to any issue arising in this case, and think it should have been excluded. The judgment could only prove title to the Robbins' tract of land, which was in no sense an issue at trial.

[21] 6. We think it was improper to admit in evidence the injunction issued by the federal court by which Staley was, at the suit of the Marnet Oil & Gas Company, his co-owner of seven-eighths of the minerals, restrained from selling any of the product of the wells. Such injunction in no way interfered with the operation of the property by either appellee and could not form the basis for such contention.

There are four assignments which relate to the refusal of the court to allow certain special charges. These assignments will not be considered, because not supported by bills of exception preserving the objections; this case having been tried prior to the recent amendment concerning the manner of reviewing the trial court's action in refusing special charges. For the reasons indicated, the judgment is reversed, and the cause remanded for another trial not inconsistent with the views herein expressed.