NEILSIMINE PAULSEN, RESPONDENT, v. GUSTAVE A. KLINGE, JR., APPELLANT.

Argued February 19, 1918—Decided June 17, 1918.

1. The Traffic act (*Pamph. L.* 1915, *p.* 285) was not intended to provide an exclusively hard and fast rule, applicable to all hazards and in all situations, regardless of actual conditions, and thus liberate from responsibility one who by fortuitously adhering to the regulations, may be otherwise reckless and indifferent to the situation of others lawfully exercising equal rights upon the highway.

2. The Traffic act (*Pamph. L.* 1915, *p.* 285) but adds an additional factor to be considered in a given situation by which negligence may be measured and determined between conflicting claimants exercising a common right.

On appeal from the First District Court of Bergen County.

Before Justices SWAYZE, TRENCHARD and MINTURN.

For the respondent, *James C. Agnew.*

For the appellant, *Robert W. Thompson.*

The opinion of the court was delivered by

MINTURN, J.   The case was tried before the court without a jury, and the court found the facts in favor of the plaintiff. The action was for damages caused by a collision between plaintiff's and defendant's automobiles, on Main street in Fort Lee, at the intersection of Anderson avenue.  The plaintiff's version of the accident was that desiring to turn into Anderson avenue, she put out her hand in that direction and blew her horn; defendant was approaching in the opposite direction about a block distant, at a speed of twenty-five to thirty-five miles an hour.  Plaintiff's car was followed by others immediately behind.  Defendant failed to reduce his speed as he approached, although he knew the intersection to be dangerous, and the collision inevitably resulted.

We think there was evidence in the case sufficient to warrant the trial court in finding that the plaintiff was not guilty of contributory negligence, and that defendant was guilty of negligence.   Chapter 156 of the laws of 1915, known as the Traffic act, was invoked by defendant for the purpose of conceding to him a right of way under the circumstances.

The section is as follows: "On all public roads, streets, highways or turnpikes, the following rules and regulations shall be in force:

"1. Every driver of a vehicle approaching the intersection of a street or public road, shall grant the right of way at such intersection to any vehicle approaching from his right."

If we assume that the defendant had the right of way, the conditions must be such as to justify him in the absolute exercise of the right.   In any event his right upon the highway is not exclusive, but at all times relative and still subject to the fundamental common law doctrine, *Sic utere tuo ut alienum non lædas*.   Nor was his right of way exclusive because he was on the right side of the road, as required by the traffic statute.

The legislature did not contemplate by this enactment to confer a monopoly of way *ad libitum* upon a person in the posture of the defendant, regardless of existing conditions and the distance he was from the intersecting street into

which others were proceeding. The plaintiff complied with the provisions of the same act when approaching the intersection while the defendant was at least a block away. She held out her hand as the statutory indication of her intention to turn into the intersecting street. It was the duty of the defendant at that time to observe the conditions and guide his machine accordingly. 2 *R. C. L.* 1184, and cases cited.

The legislative act was not intended to provide an exclusively hard and fast rule, applicable to all hazards and in all situations, regardless of actual conditions, and thus liberate from responsibility one who by fortuitously adhering to the regulation, may be otherwise reckless and indifferent to the situation of others, lawfully exercising equal rights upon the highway, but who may be subject to untoward and unlooked for situations beyond their control.

Such a construction would tend to encourage rather than diminish and obviate the dangerous situations this legislation was conceived to remedy. The common law rules applicable to negligence have not been abolished by the enactment. Its existence but adds an additional factor to be considered in given situations by which negligence may be measured and determined between conflicting claimants exercising a common right. The situation contemplated by the legislature must be present in fact in order to invoke the legislative regulation as an exclusive element to be considered in weighing the comparative tort feasance of the parties; and in any event, as the Court of Errors and Appeals has determined, at the present term in the case of *Winch* v. *Johnson, post p.* 219, not unlike the case at bar in material particulars, the negligence of the defendant is to be determined upon all the facts and circumstances of the situation, and, therefore, the conceded violation of the statutory regulation, by a defendant, does not *per se* warrant the trial court in directing a verdict for the plaintiff.

We have examined the testimony as to the damage suffered by the plaintiff, in view of the defendant's contention that some of it was too remote and was not the proximate and natural result of the accident.

We think there was sufficient testimony in the case to warrant the trial court in finding that it was neither too remote nor so disconnected from the injurious result of the collision, as to render it an improper element of damage.

The judgment will be affirmed, with costs.