[Civ. No. 3790.   Second Appellate District, Division One.—July 10, 1922.]

## JOHN C. WHITWORTH, Respondent, v. MACK B. JONES, Appellant.

[1] APPEAL—WEIGHT OF EVIDENCE—REVIEW.—Where in an action for injuries to an automobile resulting from a collision with another automobile at a street intersection there was some substantial evidence tending to establish negligence on the part of the driver of defendant's car under the Motor Vehicle Act, the weight of such evidence cannot be reviewed on appeal.

[2] MOTOR VEHICLE ACT—CHANGE OF OWNERSHIP OF AUTOMOBILE— FAILURE TO COMPLY WITH ACT—MAINTENANCE OF ACTION FOR INJURIES.—Where a son purchased an automobile with his mother's funds but registered it in his own name, and later it was agreed between them that the son should be considered the owner, but no compliance was had with the provision of the Motor Vehicle Act relating to change of ownership, the son was not by reason of such omission deprived of the right to maintain an action for injuries to the automobile.

[3] BAILMENT—INJURY TO PROPERTY—RIGHT OF ACTION BY BAILEE.— A bailee has the right to sue for damages for injuries caused to the property by a third person.

[4] ID. — OPERATOR'S LICENSE — INDORSEMENT BY PARENT OF MINOR — PRESUMPTION.—Where in an action for injuries to an automobile resulting from a collision with an automobile driven by defendant's minor son the evidence showed that the defendant owned the machine and that the son lived with him, the court was warranted in assuming, in view of the presumptions of subdivisions 15 and 33 of section 1963 of the Code of Civil Procedure, that the father indorsed the son's application for an operator's license.

APPEAL from a judgment of the Superior Court of Los Angeles County. Paul J. McCormick, Judge. Affirmed.

The facts are stated in the opinion of the court.

David R. Faries, Ivan Kelso, John R. Berryman, Jr., and J. Allen Davis for Appellant.

Frank C. Dunham for Respondent.

JAMES, J.—The judgment in this case was for damages which the court found plaintiff had suffered by reason of a collision which occurred between an automobile driven by a son of the defendant and one belonging to the plaintiff. The defendant, on this appeal, urges several grounds for a reversal of the judgment. There was a plea of contributory negligence in the answer, and a cross-complaint asserting an alleged cause of action for damages in favor of defendant, growing out of the same collision.

[1] Considering first the claim that the evidence failed to establish any negligence on the part of the driver of defendant's machine. Los Robles Avenue, in the city of Pasadena, extends in a northerly and· southerly direction. Walnut Street intersects it at right angles. Walnut Street is thirty feet in width; Los Robles Avenue is fifty feet wide. At about 7 o'clock in the evening, in November, 1919, a sister of the plaintiff was driving a large coupé westerly along Walnut Street. She was accompanied by three other

4. Liability where automobile is being used by a member of owner's family, notes, Ann. Cas. 1914C, 1091; Ann. Cas. 1916A, 661; Ann. Cas. 1917D, 1002; 41 L. R. A. (N. S.) 775; 50 L. R. A. (N. S.) 59; L. R. A. 1917F, 365; L. R. A. 1918F, 297.

Liability of owner under "family purpose" doctrine for injuries by automobile while being used by members of his family, notes, 5 A. L. R. 226; 10 A. L. R. 1449; 14 A. L. R. 1087.

ladies. The three latter were witnesses at the trial, but as none of them were paying heed to conditions upon the street at the time, their testimony furnishes little aid to a solution of the questions presented. For that reason no further reference will be made to their statements. Plaintiff's sister, who was driving the car, was an adult and had operated automobiles for a number of years. She testified that as she reached the intersection of Walnut and Los Robles Streets she looked up and down Los Robles and saw at the north only a single light located at a point which was afterward determined to be over six hundred feet away; that having slowed her machine down to a speed of between ten and twelve miles per hour she proceeded to cross Los Robles and that, when beyond the center line of that street, her car was struck on the right-hand rear side by an automobile advancing from the north, which turned out to be one belonging to the defendant and then being driven by the eighteen year old son of the latter. The witness further testified that it was night-time or "twilight" and an hour when it was necessary to have lighted the lamps on the car; she testified that, while Los Robles Avenue was supplied with lights mounted on columns along its sides, she did not notice whether those lights were burning at the time; that she did not observe defendant's automobile or know of its presence there until it collided with the machine she was driving. Chiefly involved in the decision of the trial judge is the question as to which machine had the right of way at the street intersection. Originally the Vehicle Act provided that at street intersections the automobile approaching from the right should have the right of way. In the Statutes of 1919 (p. 215, sec. 20, par. [f]), the law was amended by adding the proviso: "unless such vehicle approaching from the right is further from the point of the intersection of their paths than such first named vehicle." By the testimony of the defendant's son it appears that he assumed that he had the right of way and would be permitted to cross Los Robles Avenue in advance of plaintiff's machine. He testified that as he came south on Los Robles Avenue he observed plaintiff's machine even before it had reached the easterly curb of Los Robles; that as the latter machine reached the latter point he was about fifty feet north of the intersection of the two streets.

His testimony at different points in the examination as to this fact varied, but the court was entitled to draw its own conclusions therefrom. Other evidence showed that the right-hand wheels of defendant's car were about four feet away from the westerly curb line of Los Robles Avenue. When it is remembered that the total width of Los Robles Avenue from curb to curb was fifty feet, it appears that there was some evidence from which the trial court was justified in concluding that, as between the two machines, that of the plaintiff as it entered Los Robles was nearer the point where the paths of the two would intersect than was that of the defendant. Under the provisions of the Vehicle Act such a condition gave to the plaintiff's machine the right to pass first. There is enough also in the evidence to warrant the statement that there was a conflict as to whether the headlights on defendant's machine were burning at the time. It is true that defendant's son testified that they were so burning. Plaintiff's sister had testified that she looked to the north on Los Robles and saw only a single light six hundred feet away. Necessarily, considering the fact that the collision followed within two or three seconds of time, defendant's machine was at that time much nearer to Walnut Street than was the single light noted. Hence the admissible inference from Miss Whitworth's testimony that, had the headlights been burning on defendant's machine, she would have noticed them. The case presented a close question on the facts, but, as pointed out, there was some substantial evidence tending to establish negligence on the part of the driver of defendant's machine. Once that is determined this court has not the right to resolve any question as to the preponderance of the evidence or weight of the proof.

[2] Another contention of appellant is that the evidence was insufficient to show that plaintiff owned the automobile which was being driven by his sister. Plaintiff testified that he purchased the automobile in 1919 for his mother, who was then absent, and with her funds; that he caused it to be registered in his own name and that when his mother returned a month later, in the course of adjustment of the business affairs of the family, it was agreed that he should have the machine as his own. There was no evidence tending to dispute this state of facts. The objection at this

point as made by appellant refers to the automobile law in force at the time of the purchase, which required that, in the event of change of ownership, indorsements be made upon the old registration certificate by the transferor and transferee and a new license be issued. This act (Stats. 1917, p. 391) provides further that "until such transferee has received such certificate of registration and has written his name upon the face thereof in the blank space provided for said purpose by the department, delivery of said motor vehicle shall be deemed not to have been made and title thereto shall be deemed not to have passed, and said intended transfer shall be deemed to be incomplete and not to be valid or effective for any purpose; . . . " As plaintiff purchased this machine and caused it to be immediately registered in his own name, and as it was agreed by his mother (who owned the funds used in the purchase price), about one month after the purchase, that he should be considered the owner, he ought not be deprived of his right to maintain this action because only that the exact technical procedure prescribed in the automobile law had not been complied with. The original license had been issued in the name of plaintiff, who at once had and continued to have actual control of the vehicle. Defendant's only concern in this regard is to be assured that he may not be subjected to another action for damages. Assuming that, by reason of the restriction of the Vehicle Act, the legal title to the automobile rested in the mother of the plaintiff, plaintiff had acquired the right, by reason of the agreement that title should be transferred to him, to have the mother complete the transaction and make the indorsements of transfer as the law provided should be done. Assuming that the law prevents the passing of title in such circumstances, the mother remained only as the holder of the bare legal title with no substantial or beneficial interest in the property. There is not concerned here any question as to the rights of creditors of the mother, and, as between the parties mother and son, the mother should be held to be estopped from asserting any right of action for damages as against the defendant. This reasoning applies regardless of whether it be considered that the original transaction involving the purchase of the machine was properly carried out so as to vest title in the mother, or that the

mother failed to make effectual the transfer of her title in the machine to plaintiff. There is a second answer to the contention to which the foregoing discussion has been addressed, and that is this: Conceding that the plaintiff did not become the legal owner of the automobile, he did nevertheless, by reason of his having been given possession of the machine and having at all times exercised control over it, acquire the rights of a bailee. [3] Among those rights is that to sue for damages for injuries caused to the property by third persons. "The bailee is entitled to the possession of the property, . . . therefore has a special right or property in the chattel to the extent of his bailment contract, and can protect it against wrongdoers who occasion loss or injury. . . . In such cases the damages are not confined to the mere interest of the bailee, but in case of injury or loss of the property he may recover its full value, together with any special damage to him, and for all beyond his own interest he would be a trustee for the bailor or owner." (Van Zile on Bailments and Carriers, 2d ed., par. 57. On the general subject see, also, 3 R. C. L., pp. 138, 139; also, *Boles* v. *Stiles*, 188 Cal. 304 [204 Pac. 848].) That this right of the bailee to sue for all damages caused by injury to the property in his possession may be restricted by the contract of bailment should be taken as a qualification of the general rule stated. From the facts here shown no such restriction would be implied.

[4] It appeared in evidence that the son of defendant was eighteen years of age and that he held a driver's license authorizing him to operate an automobile on the public ways. It appeared at the time that his father was accustomed to allow the young man to use the automobile for his own purposes and that, on the evening in question, the son was on his way to some place on a mission which had to do only with his own convenience or pleasure. Under this state of facts appellant argues that there was no liability on the part of the father to respond in damages for the tort of the son. The case of *Spence* v. *Fisher,* 184 Cal. 209 [14 A. L. R. 1083, 193 Pac. 255], is cited in support of that argument. That was a case where an adult daughter, operating an automobile for her own convenience and not for any necessary family purpose, was held to be solely responsible for damages caused through the negli-

gent operation of the machine. The difference between that case and this is that the daughter there was an adult and the Vehicle Act of California expressly preserves as against a parent liability for negligence committed by a minor child while operating an automobile belonging to the former. Section 24(a) of the Statutes of 1917, at page 408, provides that an operator's license shall not be granted to a minor unless the parent or parents having the custody of the applicant shall have joined in signing the application, and that the negligence of such minor shall then be imputed to "the person or persons who shall have signed the application of such minor for said license." Appellant insists that the father cannot be held responsible because it does not appear that he signed the application for the operator's license which was issued to the son. It is true that the evidence is silent on that question, but certain presumptions may be indulged in in order to sustain the judgment. In the first place, the evidence showed that the father owned the machine and that the son lived with him. The father was the head of the household and the son was under his control. Necessarily, then, he would be the proper person to have indorsed the application for the operator's license. There are two pertinent presumptions declared to exist under section 1963 of the Code of Civil Procedure: (15) "that official duty has been regularly performed"; (33) "that the law has been obeyed." The trial judge was warranted in assuming that the father did indorse the son's application and that the officers in charge of the motor vehicle department would not have issued the operator's license without such indorsement being supplied.

The judgment is affirmed.

Conrey, P. J., and Shaw, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 7, 1922.

All the Justices present concurred.

Richards, J., *pro tem.*, and Myers, J., *pro tem.*, were acting.