[Civ. No. 4530. First Appellate District, Division One.—November 22, 1923.]

MAX E. GRILLICH, Appellant, v. SYDNEY WEINSHENK et al., Respondents.

[1] NEGLIGENCE — COLLISION AT INTERSECTION — RIGHT OF WAY — IN-STRUCTIONS.—In this action for damages for personal injuries sustained by plaintiff as the result of a collision at the intersection of two streets, between a motorcycle operated by himself and an automobile driven by defendant, the instruction "that if you find from the evidence the relative speeds of plaintiff's motorcycle and the defendant's automobile were such that at the point of intersection of their respective paths would have brought them in contact if continued, in such case the Motor Vehicle Act of this state required the plaintiff [who approached the intersection from the north] to yield the right of way to this defendant [who approached the intersection from the west], and if you further find that such omission on his part proximately caused or contributed to this accident, your verdict must be in favor of the defendants," was proper.

[2] ID.—CONSIDERATION OF INSTRUCTIONS AS A WHOLE.—In such an action, the charge to the jury must be taken together, and if, without straining any portion of the language, it harmonizes as

1. Violation of statute or ordinance regulating movement of vehicles as affecting violator's right to recover for negligence, note, 12 A. L. R. 458.

a whole, and fairly and correctly presents the law bearing on the issues tried, the appellate court will not disturb the judgment because a separate instruction does not contain all the conditions and limitations which are to be gathered from the entire text.

[3] ID.—LAST CLEAR CHANCE—EVIDENCE—INSTRUCTIONS.—In such an action, the contention by plaintiff that the "court erred in giving several instructions directing a verdict and omitting from said instructions the element of the doctrine of last clear chance," is without merit, where the evidence establishes the fact that the operators of the vehicles were watching each other as they approached the intersection of their paths, and both continued in their paths until the impact occurred, and the record shows, too, that the jury were instructed on the doctrine of last clear chance, at the request of plaintiff.

[4] ID.—CONTRIBUTORY NEGLIGENCE — REPETITION OF INSTRUCTIONS.— The fact that, of the eighteen instructions given at the request of defendants, fourteen embodied the doctrine of contributory negligence in some form, and that all of them were read by the court immediately following the instructions given at plaintiff's request, did not constitute prejudicial error.

[5] ID.—OWNERSHIP OF AUTOMOBILE BY FATHER—AGENCY—LIABILITY —INSTRUCTIONS.—The automobile driven by defendant having been owned by her father, the jury was properly instructed "that a father who is not guilty of personal negligence in the matter is not liable for damages sustained by third parties by reason of the negligent driving of an automobile by an adult member of his family, when such member of the family is using the same for his or her own purposes, and not those of the father, the automobile being owned and maintained by the father for the general convenience, use, and pleasure of his family, and the particular member of the family operating the same having his permission to use the same at his or her pleasure."

[6] ID. — FAILURE TO SLOW DOWN — CONTRIBUTORY NEGLIGENCE — INSTRUCTIONS.—The instruction, given at the request of defendant, that "If you find from the evidence the plaintiff saw the defendant about to cross the intersection . . . in time to have stopped or to have slowed down his motorcycle and have avoided this accident, then I instruct you that he was guilty of contributory negligence; and if you further find that such negligence either proximately caused or contributed to this accident your verdict must be in favor of the defendant," when read in conjunction with the entire charge, and construed in reference to the proof, was not misleading or confusing, and did not withdraw from the

5.   Liability of owner of automobile under family purpose doctrine for injuries by automobile while being used by member of his family, notes, Ann. Cas. 1918E, 1137; 5 A. L. R. 226; 10 A. L. R. 1449; 14 A. L. R. 1087; 20 A. L. R. 1469; 23 A. L. R. 620.

jury the question whether plaintiff was or was not guilty of contributory negligence.

[7] ID.—FINDING AGAINST PLAINTIFF—AGENCY IMMATERIAL.—In an action for damages for personal injuries sustained by plaintiff as the result of a collision between a motorcycle which he was riding and an automobile driven by one of the defendants, but which was owned by her father, the other defendant, the jury having found against plaintiff upon the question of negligence, the question whether the daughter was acting as agent for her father becomes immaterial.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. E. P. Shortall, Judge. Affirmed.

The facts are stated in the opinion of the court.

Charles S. Wheeler, Jr., A. D. Schaffer and Anthony Podesta for Appellant.

Chas. W. Haswell and Haswell & Pierce for Respondents.

ST. SURE, J.—Action for damages for personal injuries suffered by plaintiff as the result of a collision between a motorcycle operated by himself and an automobile operated by defendant Dorothy Weinshenk, who was giving her sister-in-law a ride in the open air for health's sake. The complaint alleged that the damages were caused through the negligence of Dorothy Weinshenk. Sydney Weinshenk, her father, was made a codefendant by reason of his ownership of the automobile. There was a plea of contributory negligence in the answer. The cause was tried before a jury, which gave a verdict in favor of defendants. Plaintiff appeals, basing his demand for a reversal upon the ground that the trial court gave certain instructions, at the request of defendants, which were erroneous and prejudicial.

The accident occurred at the intersection of Cabrillo Street and Twelfth Avenue, in San Francisco, at about 5 o'clock in the afternoon. Cabrillo Street is fifty feet wide from curb to curb, and Twelfth Avenue is forty feet wide from curb to curb. Plaintiff was operating a motorcycle and Miss Weinshenk was operating a seven-passenger Cadillac touring car. Plaintiff was traveling on Twelfth Avenue, approaching the intersection from the north. Defendant Dorothy

Weinshenk was traveling on Cabrillo Street, approaching the intersection from the west. From aught that appears the streets were otherwise clear of traffic. A two-story building was situated on the northwest corner of Twelfth Avenue and Cabrillo Street.

Plaintiff testified that he was going at a speed of fourteen or fifteen miles an hour; that as he passed the two-story building on the corner he saw a Cadillac car coming about seventy-five feet away, and that he kept going right along; that the Cadillac was traveling at a speed of twenty or twenty-five miles an hour; that the Cadillac turned to the right, he turned to the left, and there was a collision. Upon cross-examination plaintiff further testified that he never slackened his speed or applied his brakes after seeing the approaching automobile, but kept going ahead at the same speed; that he could have stopped his motorcycle within a distance of six or eight feet, and that he had a distance of sixty-two feet in which he could have brought it to a stop; that after he passed the property line of Cabrillo Street he saw the automobile all the time and kept watching it; that the position of the automobile and the motorcycle was such that when they reached the intersection of their paths a contact was inevitable; that the automobile and the motorcycle reached the intersection at the southwest corner of the streets at the same time; that the Cadillac was directly across the path of the motorcycle; that both reached the southwest corner at the same time, when the Cadillac swung to the right and the motorcycle to the left.

Mr. Braunagel, who came upon the scene immediately after the accident, testified that he saw the automobile standing in the street twenty or thirty feet from the corner of Cabrillo Street and Twelfth Avenue, and that the motorcycle was lying fifteen or twenty feet to the rear of the automobile.

Miss Weinshenk testified that as she reached the point of intersection she was driving at a speed of approximately twelve miles an hour; that as she neared the center of the street she saw the motorcycle coming at a speed of twenty-five miles an hour; that the motorcycle seemed to be wavering in its path; that she watched the motorcyclist until she saw him turn, and then she turned on to the curb to get out of his way; that she could have stopped the car without

going on to the sidewalk, but she was endeavoring to avoid a serious accident.

Mrs. Ruth Weinshenk, sister-in-law of Miss Weinshenk, was the only passenger in the automobile. She testified that in her opinion the automobile was traveling at a speed of about fifteen miles an hour at the intersection, and that the motorcycle was coming very fast.

[1] Plaintiff complains that the court erred in giving the following instruction:

"I instruct you that if you find from the evidence the relative speeds of plaintiff's motorcycle and the defendant's automobile were such that at the point of intersection of their respective paths would have brought them in contact if continued, in such case the Motor Vehicle Act of this state required the plaintiff to yield the right of way to this defendant, and if you further find that such omission on his part proximately caused or contributed to this accident, your verdict must be in favor of the defendants."

This instruction embodied defendants' interpretation of section 20, subdivision f, of the Motor Vehicle Act (Stats. 1919, p. 215), which reads as follows:

"Excepting where controlled by such traffic ordinances or regulations as are permitted under this Act, the operator of a vehicle shall yield the right of way at the intersection of their paths to a vehicle approaching from the right unless such vehicle approaching from the right is further from the point of intersection of their paths than such first-named vehicle."

It is urged that the interpretation contained in the instruction is contrary to that stated in *Hill* v. *Jacquemart,* 55 Cal. App. 498 [203 Pac. 1021], and *Whitworth* v. *Jones,* 58 Cal. App. 492 [209 Pac. 60]. In *Hill* v. *Jacquemart,* the court merely held that a person having the right of way upon entering an intersection does not, under the Motor Vehicle Act (Stats. 1919, p. 215, sec. 20, subd. f), continue to have it until he has passed out of the intersection notwithstanding a complete change of course of his vehicle. In *Whitworth* v. *Jones,* it was held, under certain evidence adduced at the trial, that the court was justified in concluding, as between two machines, which had the right to pass first.

The language of the statute of 1919 refers to the intersection as the "intersecting of their paths." It is the idea

of counsel for plaintiff that the statute should be interpreted so that the words "further from the point of intersection of their paths" shall be construed to mean "further from the intersection of the streets upon or along which they are traveling." In addition to the complained of instruction and contrary to it, the court also gave an instruction, at the request of plaintiff, adopting plaintiff's construction, which, we believe, is contrary to the express wording of the statute.

In defense of the complained of instruction counsel for defendants argue that any rights at a street intersection are correlative, and that the correlative basis of these rights involves the elements of relative position, relative speed and relative distance from the point of intersection. In *Hilton* v. *Iseman*, 212 Ill. App. 255, it is said that it is axiomatic that the rights of vehicles at street intersections are correlative. In other words, none has the right of way to the exclusion of others; all must proceed with due circumspection so as not to come into collision with other vehicles. In *Barnes* v. *Barnett*, 184 Iowa, 936 [169 N. W. 365], the court said: "The right of precedence at a crossing, whether given by law or establishd by custom, has no proper application except where the travelers or vehicles on the intersecting streets approach the crossing so nearly at the same time and at such rates of speed that if both proceed each without regard to the other, a collision or interference between them is reasonably to be apprehended. In such case it is the right of the one having the precedence to continue his course, and it is the duty of the other to yield him the right of way."

*Greater Motors Corp.* v. *Metropolitan Taxi Co.*, 115 Wash. 451 [197 Pac. 327], was an action for damages for negligence resulting from a collision of two automobiles at a street intersection. An ordinance of the city of Seattle required drivers of automobiles to look out for and give the right of way to vehicles simultaneously approaching a street intersection from the right. The court held that the right of an automobile driver who has the right of way is not exclusive, but is at all times relative and subject to the common-law doctrine that the law must be so used as not to injure another, citing *Paulsen* v. *Klinge*, 92 N. J. L. 99 [104 Atl. 95], and *Ray* v. *Brannan*, 196 Ala. 113 [72 South. 16]. This court, in *Kinney* v. *King*, 47 Cal. App. 390 [190 Pac. 834], had under consideration a traffic ordinance of the city

of Los Angeles which provided "the drivers of all vehicles must look out for and give right of way to vehicles approaching simultaneously from their right at street intersections." This court said, at pages 392, 393, of 47 Cal. App. [190 Pac. 835], "it may be taken as established by the plaintiffs' evidence in the case that the defendant, in approaching the intersection of the two streets in question at a rate of speed exceeding thirty miles per hour, was guilty of negligence *per se*, but conceding this to be true it must also be admitted, in view of the plaintiff's own evidence, that when the plaintiff F. E. Kinney, driving his automobile, approached the westerly line of intersection of these two streets, he saw the defendant's automobile traveling at such rate of speed and at such a point on Lake Street as would bring the defendant's car in collision with his own if each proceeded on his respective line of approach at his respective rate of speed across such intersecting streets. This being so, the plaintiffs and the defendant must be held to have been 'approaching simultaneously such intersection' within the meaning and intent of the provision of the ordinance above set forth. It was therefore the plaintiff's plain duty under such circumstances to give to the defendant the right of way across such intersection." We are of the opinion, in view of the law and the evidence in the instant case, that the instruction complained of was a proper one.

Plaintiff next complains that the "court erred in giving several instructions directing a verdict and omitting from said instructions the element of the doctrine of last clear chance." It is contended that these instructions, although stating correctly the general rule relating to negligence, were erroneous because they did not include a statement of the "last clear chance" doctrine. [2] We must take the charge together, and if, without straining any portion of the language, it harmonizes as a whole, and fairly and correctly presents the law bearing on the issues tried, we will not disturb the judgment because a separate instruction does not contain all the conditions and limitations which are to be gathered from the entire text. (*People* v. *Doyell*, 48 Cal. 85, cited repeatedly with approval.) [3] The evidence establishes the fact that the operators of the vehicles were watching each other as they approached the intersection of their paths. The plaintiff testified that he might have stopped his motor-

cycle, and thus avoided an accident. Miss Weinshenk did not say that she could have stopped, but she did say she drove on to the sidewalk in an endeavor to avoid a collision. Both continued in their paths until the impact occurred. In *Konig* v. *Lyon et al.*, 49 Cal. App. 113 [192 Pac. 875], this court held that the doctrine of last clear chance has no application to a case of personal injuries resulting from a collision between a bicycle and a truck, where each driver saw the other approaching and each held to his course. In *Blackburn* v. *Marple*, 43 Cal. App. 236 [184 Pac. 873], a case arising from an accident where one driver turned to the left and the other turned toward the right in an effort to avoid a collision, it was held that, under the evidence, there was nothing which would make the doctrine of the last clear chance applicable to either party. An examination of the record before us shows, too, that the jury were instructed on the doctrine of last clear chance, at the request of the plaintiff; so we must hold that this assignment is without merit.

[4] Counsel for plaintiff next complain that "of the eighteen instructions given at the request of defendants, fourteen embodied the doctrine of contributory negligence in some form; that all of them were read by the court immediately following the instructions given at plaintiff's request, and their effect could not have been otherwise than to saturate the minds of the jurors with this principle and leave with them as a last impression that this emphasis and constant repetition by the court implied fault on the part of plaintiff."

It may be, as suggested, that the order in which the trial court read the instructions made the "last impression" on the minds of the jurors, although we have heard it persuasively maintained that first impressions are the most lasting. This objection, however, borders on the realm of psychology, wherein the law seems loath to enter. And, as we are not permitted to speak *ex cathedra* upon the subject, we must refrain from further pursuing the discussion.

The court gave fifty-nine instructions, nineteen at the request of plaintiff, a like number at the request of defendants, and the remainder of its own motion. It does appear that several propositions of law were separately stated, whereas they might have been contained in a single instruction. A

few plain, simple propositions, clearly stated, give a jury a more satisfactory understanding of the principles involved than pages of dissertation. (*People* v. *Ah Fung,* 17 Cal. 377, 379.) Respective counsel, undoubtedly through partisan fervor of advocacy, iterated such forms as, "if you find from the evidence," thus and so and thus and so, "your verdict must be for the defendants" or "for the plaintiff," as the case may be. Plaintiff complains that prejudice resulted to him from such repetition, and he cites the following cases as supporting his view: *Chicago, M. & St. P. Ry. Co.* v. *Alexander,* 47 Wash. 131 [91 Pac. 626, at 629]; *Kahl* v. *Chicago, M. etc. Ry. Co.,* 125 Ill. App. 294, 298; *Munsey* v. *Marnet* (Tex. Civ.), 199 S. W. 686, at 690; *Storr* v. *James,* 84 Md. 282 [35 Atl. 965, 967]; *Robbins* v. *Fugit,* 189 Ind. 165 [126 N. E. 321, 322]; *Powell* v. *Messer,* 18 Tex. 402, at 406; *Murray* v. *White,* 82 Cal. 119 [23 Pac. 35].

*Chicago, M. & St. P. Ry. Co.* v. *Alexander* was an action to condemn land. The court held that certain evidence admitted as to damages was erroneous and, upon that ground, sent the case back for retrial. In passing, the court said: "Appellant contends that the trial court erred in unnecessary repetitions of its instructions, especially of those favorable to respondents. It contends that such action had a tendency to place undue and particular stress upon such instructions, was prejudicial to appellant, and constituted reversible error. The instructions were frequently and unnecessarily repeated. In view of the new trial to be granted herein we will state that such a course should be avoided by trial judges. . . . Although a judgment might not in every instance be reversed for such unnecessary repetitions, it might, in furtherance of justice, sometimes become necessary to grant a reversal. (1 Blashfield on Instructions to Juries, sec. 108; 2 Cur. Law, 470.)"

*Kahl* v. *Chicago, M. & St. P. Ry. Co.* was an action for damages for negligence. The court considered a series of instructions, and held that the jury was improperly instructed with respect to the duty of the railroad company to give crossing signals. An instruction on ordinary care was also held erroneous. The court said: "Eleven of defendant's instructions contained repetitions of the doctrine that to entitle plaintiff to recover, the evidence must show that de-

ceased was in the exercise of due care for his safety, that his death was caused by the negligence of defendant and that his own negligence did not cause or contribute to it. We are of opinion that the frequent repetition of the same principle, coming from the learned and able judge whose fairness cannot be questioned, tended to create the impression that the court thought this element of the case should be particularly emphasized, and was calculated to have an undue influence on the minds of the jury. While repetitions are not always avoidable and are not necessarily erroneous, when they are so frequent upon a vital point, as in the case in this record, we think the effect could not be otherwise than harmful.''

*Munsey* v. *Marnet* was a suit for the purpose of canceling oil leases: The court reversed the judgment primarily for the reason that a single instruction on the subject of forfeiture was deemed to be prejudicial. The court commented as follows: ''In reference to the manner of submitting the issue to the jury, it is sufficient to say that while in a general way either side is entitled to a full affirmative presentation of the case or defense, and a special grouping of facts in certain cases, any repetition or emphasis thereof that essentially gave such case, issue or defense prominence, would be erroneous, and the rule should be observed upon another trial.''

*Storr* v. *James* was an action for trespass *quare clausum fregit*. The judgment was affirmed. The court, in passing upon a complaint that the court erred in refusing additional instructions, said ''a refusal to grant other prayers which reiterated the same principles though couched in different words, is not erroneous.''

*Robbins* v. *Fugit* involved the contest of a will; issue undue influence and unsoundness of mind. The judgment was reversed because of inaccuracy of instructions on the subjects of monomania and hallucination. The court also expressed the opinion that the instructions were entirely too voluminous, and further observed that while needless repetition is not always reversible error it is always bad practice.

*Powell* v. *Messer* was a suit upon a promissory note. One of the grounds relied upon for reversal was error of the court in refusing to give certain instructions. The court

held that it was proper to refuse the instructions, remarking that it was the court's duty to guard against repetitions.

*Murray* v. *White* (the only California authority cited on this point) was an action to set aside a transfer of property in fraud of creditors. The court said: "It is apparent from appellant's brief that his main objection to the instructions of the court on this point is that they 'placed too prominently before the jury the law applicable to partnership relations.' But that would be an unsubstantial ground for the reversal of a judgment, unless in a case much more extreme in that respect than the one at bar."

The general rule seems to be that the mere fact of repetition is not alone, in every case, reversible error. And we are not permitted to reverse a case because of an erroneous instruction unless it shall appear from the record that such instruction was prejudicial, and also that by reason of such instruction the party complaining suffered substantial injury, and that a different result would have been probable if such an instruction had not been given. There shall be no presumption that error is prejudicial or that injury was done if error is shown. (Sec. 475, Code Civ. Proc.)

In the case of *Gandy* v. *Bissell's Estate*, 5 Neb. (Unof.) 184 [97 N. W. 632, 634], it appears that the instructions given by the trial court contained conclusions similar to those complained of in the case at bar. The court, in affirming the judgment, said: "The complaint that these instructions are almost identical seems to be well founded, but we are unable to say as a matter of law that the repetition of the same legal principle in the manner here given was prejudicial error calling for a reversal of the judgment."

While the practice of repetition has been frequently disapproved, yet if the instructions given are correct statements of the law repetition will not ordinarily be ground for reversal (*Lecklieder* v. *Chicago City Railway*, 172 Ill. App. 557, 564). We have read the entire charge given by the court in the case before us; we have considered therewith the evidence adduced at the trial, and we are constrained to believe that the instructions attacked are not open to the objection that they were prejudicial to the rights of the plaintiff.

[5] Plaintiff next complains that the following instruction was erroneous: "I instruct you that a father who is not

guilty of personal negligence in the matter is not liable for damages sustained by third parties by reason of the negligent driving of an automobile by an adult member of his family, when such member of the family is using the same for his or her own purposes, and not those of the father, the automobile being owned and maintained by the father for the general convenience, use and pleasure of his family, and the particular member of the family operating the same having his permission to use the same at his or her pleasure.''

It is contended that the instruction is misleading and confusing; that the use of the word ''personal'' conveys the idea that the defendant, Sydney Weinshenk, is not liable to plaintiff unless he, himself, actually participated in the act of negligence causing the injury, and the phraseology is involved and confusing. The instruction is neither misleading nor confusing. It contains a clear statement of the law. The objection to the use of the word ''personal'' is trifling. The instruction follows the rule laid down in *Spence* v. *Fisher*, 184 Cal. 209 [14 A. L. R. 1083, 193 Pac. 255].

[6] Plaintiff also attacks the following instruction given at the request of defendants: ''If you find from the evidence the plaintiff saw the defendant about to cross the intersection of 12th Avenue and Cabrillo Street in time to have stopped or to have slowed down, or that by the exercise of reasonable care the plaintiff could have stopped or slowed down his motorcycle and have avoided this accident, then I instruct you that he was guilty of contributory negligence; and if you further find that such negligence either proximately caused or contributed to this accident your verdict must be in favor of the defendant.'' It is contended that this instruction is not only misleading and confusing, but withdraws from the jury the question whether plaintiff was, or was not, guilty of contributory negligence. This instruction, like others singled out for criticism, should be read in conjunction with the entire charge. So read it is neither confusing or misleading, nor does it withdraw any question from the jury. Construed in reference to the proof the instruction was a proper one. Plaintiff's further objection that the instruction deprived him of the benefit of the doctrine of last clear chance has heretofore herein been discussed and disposed of.

[7] In his last assignment plaintiff digresses from the line of attack stated in his opening brief, to the effect that he would "rely upon, and confine himself to, errors in law, consisting of the giving, at the request of defendants, of erroneous and prejudicial instructions to the jury." He asserts that the "evidence is sufficient to justify a finding by the jury that Dorothy Weinshenk was acting as agent for defendant Sydney Weinshenk, in operating the Cadillac." The facts upon the subject in the instant case are quite similar to those mentioned in the case of *Spence* v. *Fisher,* 184 Cal. 209, 210 [14 A. L. R. 1083, 193 Pac. 255]. The court, at the request of plaintiff, fully and elaborately instructed the jury upon the question of express or implied agency. The jury having found against plaintiff upon the issue of negligence, the question of agency becomes immaterial.

Judgment and order affirmed.

Tyler, P. J., and Needham, J., *pro tem.,* concurred.