C. C. BARNES, Appellee, v. A. M. BARNETT, Appellant.

NEGLIGENCE:  Automobile Collision.  Manifestly, one is not nec-
1  essarily guilty of contributory negligence in driving across an
intersecting street in front of one who has the right of way.

TRIAL:  Rejecting Allowable Theory.  Every allowable theory well
2  pleaded and having fair support in the evidence must be sub-
mitted to the jury.  So held where automobile drivers were in
dipute as to who was to blame for a crossing accident.

NEGLIGENCE:  Improper Measure.  It is error to instruct that the
3  driver of a conveyance is negligent in attempting to cross in
front of one having the right of way only in case it is *apparent*
to such driver that it is *impossible* to cross without a collision.

HIGHWAYS:  Law of the Road.  The right of precedence at a
4  crossing, whether existing by law or custom, has no application
when the one not having such right approaches a crossing and
has no reasonable grounds for apprehending a collision because
of the distance from the crossing of the one having such right.

*Appeal from Des Moines Municipal Court.*—O. S. FRANK-
LIN, Judge.

NOVEMBER 16, 1918.

ACTION at law to recover damages on account of an al-
leged collision of automobiles in the city of Des Moines.
Judgment for plaintiff, and defendant appeals.—*Reversed
and remanded.*

*Thomas A. Cheshire,* for appellant.

*Carr, Carr & Evans,* for appellee.

WEAVER, J.—In his petition, plaintiff alleges that he
was driving an automobile west on Ingersoll Avenue in the
city of Des Moines, intending to turn south on Thirty-sixth
Street; that, as he was making the turn, he
discovered the defendant coming to the east
on the south side of the avenue, driving an

1. NEGLIGENCE:
automobile col-
lision.

automobile at such high rate of speed that plaintiff, to avoid a collision, turned his car to the east, giving defendant room to pass him; but notwithstanding this precaution, defendant carelessly, negligently, and recklessly drove her car into and against the car of the plaintiff, breaking and injuring it to the extent of $500, for which he asks judgment.

The defendant admits that, at the time mentioned, she was driving her car east on Ingersoll Avenue, and alleges that, as she was approaching the Thirty-sixth Street crossing, she saw plaintiff's car moving west on the north side of the avenue; that, as plaintiff neared Thirty-sixth Street, he turned his car slightly into the intersection, on the east side thereof, and practically stopped; that defendant's driver, noticing this situation, and knowing that he had the right of way over the crossing as against the plaintiff, who had practically stopped, continued his course along the south side of the avenue, and, just as he entered upon the intersection, plaintiff suddenly put his car in motion, driving it immediately in front of defendant's car, causing the collision of which he complains. Defendant further alleges that, in driving east on the south side of Ingersoll Avenue she had the right of way, in preference to the plaintiff, moving west on the north side of the avenue and turning to the left on Thirty-sixth Street; and that the collision was caused by plaintiff's own negligence in making a short turn to the south on the east side of the intersection, instead of making a wide turn to the west side of such intersection, as the law requires. Defendant also denies that she or her driver was in any manner negligent, or that her car was being driven at a negligent or reckless rate of speed.

Defendant, by way of counterclaim, restates the allegations of her answer, and alleges that the collision was caused by plaintiff's negligence, and that thereby her car was damaged, and that she herself sustained serious and painful injuries, for all which she asks judgment in the sum of

$1,000. The issues were tried to a jury, which returned a verdict for the plaintiff for damages to the amount of $93, and defendant appeals.

The exceptions taken and argued by appellant relate principally to the instructions given, and to the denial of defendant's requests for instructions. To an understanding of the bearing and effect of the rulings of the court in these respects, some reference to the testimony is necessary. It will also aid in understanding the situation to note that what the witnesses call the "north side" of Ingersoll and "south side" of Ingersoll are separate and independent tracks, each 20 feet wide, between which is an unpaved and unimproved strip 20 feet wide, occupied and used exclusively for street railway purposes, except at the street crossings, which are paved and open to public use.

As a witness, the plaintiff, speaking of his approach to Thirty-sixth Street, says:

"Before I started to turn south on Thirty-sixth Street, I saw a car coming up. It must have been a block, pretty near, coming east, traveling fast. I thought I could get ahead of it. Thirty-sixth Street is not very wide. I had stopped pretty near on the other corner on the opposite side of the street, and swung around to go south. I seen I could not make it,—he was so close onto me he would hit me anyway. I was trying to get turned east so I would be going the same way he was, and give him room between me and the curb, to go by; but I couldn't get turned. I got part way angled around, headed the same way he was. My machine was not running fast enough to get away from him. He hit me cornerwise about the front of my wheel, and hit the wheel and the curb about the same time. He hit about a foot of the running board of my left side, and front wheel on the other. Going from Ingersoll Avenue onto Thirty-sixth Street, I made just a natural turn. I was going south on Thirty-sixth Street. I went about the middle of the pav-

ing. It is narrow there. In making the turn, I went up about the center of Thirty-sixth Street. In going south on Thirty-sixth Street from Ingersoll, I had to cross the car tracks at that intersection. When I first noticed the car of defendant approaching, just as I started to turn south, I saw he was up the street, 300 feet away, I would say. After I drove over to the other place, there was a street car right behind me, and I drove across. I thought I would have plenty of time to get across. I saw I couldn't go ahead, to avoid an accident. The head end of my machine was then just coming out onto the paving south of the street car tracks on Ingersoll. The defendant's car was about a hundred feet, I guess, away, at that time. It was all done in such a hurry,—I tried to get away. At the time I started to turn east on Ingersoll Avenue and let him go by, my machine was going about 8 miles an hour. The defendant's machine was going 40 or 45 miles an hour."

On cross-examination, among other things, he says:

"I was about half way across the south track of the avenue, when the collision occurred. As I approached the south side of Ingersoll Avenue, I knew that this car was coming east on that side, and close to the intersection, and knew it was coming fast. Did not think it was likely to collide. I was driving slowly—not over eight miles an hour. Thought I had time to get across. As I came west, I turned right around the curb, just about the middle of the street. Made as good a turn as they ordinarily do. It is narrow there. Made an ordinary turn,—not absolutely to the west side. Knew it was the custom at street intersections to give east and west traffic the preference. First saw the car when it was about 300 feet west of Thirty-sixth Street. * * * The defendant's car sounded its horn once, about the time when I first saw it. My car was headed to the southeast in the south track of the avenue when it was hit. I was trying to let him pass me on the right side."

Another witness, King, who was with the plaintiff at the time, says that, as they approached the Thirty-sixth Street intersection, he saw the defendant's car, coming at a terrific rate of speed, about 300 feet away, and called plaintiff's attention to it; that, as the car came up, plaintiff tried to turn his car, to avoid the collision, but did not succeed. This witness estimates the defendant's speed at 40 or 45 or possibly 50 miles per hour, and on cross-examination, increases his estimate to "a mile a minute."

For the defendant, her driver says that, as he drove east on the south side of the avenue, he saw plaintiff's car coming west on the north side; that, as the witness approached the intersection with Thirty-sixth Street, plaintiff was turning south into that street. He further says that, in making the turn, plaintiff cut the southeast corner, and drove to about the center of the street, where the collision occurred; plaintiff "slowed up as he turned, like he was going to stop and let me have the right of way" (this last phrase in the statement was stricken, on plaintiff's objection). Further testifying, the witness says of the plaintiff's movements:

"He slowed down at Thirty-sixth Street; after he turned, he went slower yet. At that time, I was between Thirty-sixth and Thirty-seventh Streets. I had my car coasting; it was out of gear. As I saw him slow down, I gave my car gas, and at the same time, he did the same. He started out in front of me. I couldn't go either way to miss a telephone pole there. His car was right crossways of the street. He was headed south, and I was headed east. I was traveling about 18 miles an hour before the collision, and about 12 miles when I hit him. I applied my brakes as soon as I saw him start; he was right on top of me at that time."

The driver's testimony is corroborated, in most respects, by the defendant. She says they approached Thirty-sixth Street with their car coasting, at about 16 to 18 miles

per hour; that plaintiff's car appeared to slow down, and she thought almost stopped, and it "seemed as though, when we gave our car power, plaintiff gave his car power at the same instant." .

The foregoing, while not a complete statement of the testimony, is sufficient to show some of the material questions of fact which the record shows were left in dispute at the close of the trial.

I.   Before the cause was submitted to the jury, the defendant moved for a directed verdict in her favor, the principal ground stated therefor being that the evidence conclusively establishes contributory negligence on the part of plaintiff.  The motion was overruled, and the appellant assigns error thereon.

The ruling was correct.  It may be admitted that, had the jury found the plaintiff chargeable with contributory negligence, and therefore not entitled to recover, the verdict would have ample support in the testimony; but the existence of contributory negligence is peculiarly a jury question, and in our judgment, the record does not reveal one of those cases where the evidence is so undisputed and convincing as to make the question one of law.

II.   The second paragraph of the court's charge to the jury is as follows:

"You are instructed that the court, as a proposition of law, has found that the defendant, A. M. Barnett, was guilty of negligence substantially as charged in plaintiff's petition, in the driving of her automobile at the time of the accident in question; therefore, Proposition 1, as provided in Instruction 1, heretofore given, has been established as a matter of law, and it will be unnecessary for you to inquire further as to that proposition.  And the counterclaim of the defendant has been withdrawn by the court from your consideration, and you will give it no attention."

2. TRIAL: rejecting allowable theory.

To this charge, the defendant excepted; and we are quite clear that the exception must be sustained. If we could be justified in holding it to have been proven without dispute that, when the plaintiff turned into the street intersection, defendant was 300 feet away, coming with "terrific speed," an instruction that she was guilty of negligence, as a matter of law, would not be erroneous. But such is not the state of the proof. Under the evidence, the jury could have found that defendant and her driver were operating their car at not to exceed 15 to 20 miles per hour; that plaintiff, as he swung his car into the Thirty-sixth Street intersection, saw defendant approach, and slowed down his speed in such manner as might reasonably indicate to the defendant and her driver his intention to yield to them the customary precedence in the right of way; and that, in reasonable reliance thereon, they rightfully accelerated their speed, to cover the crossing first; and that the collision occurred, not from any lack of due or reasonable care on their part, but from the confusion or mistake of the plaintiff in accelerating his own speed, and trying to make the crossing in the face of practically certain collision.

In view of the necessity of a new trial, it is proper for us to say that the foregoing is not a finding of fact on part of this court, nor the expression of its opinion on the merits of the case, but simply a holding that the testimony on these matters is not undisputed, and that the truth thereof is for the jury to consider and determine. The rule is too elementary and the precedents too numerous to call for any citation of authorities.

III. The sixth paragraph of the court's charge is in the following form:

"You are instructed that, if the plaintiff knew that the defendant's car was approaching the intersection of Thirty-sixth Street and Ingersoll Avenue at a high rate of speed, and at such a rate of speed that it was apparent to the plaintiff that

3. NEGLIGENCE: improper measure.

it would be impossible for him to cross the intersection of Thirty-sixth Street and Ingersoll Avenue in front of or ahead of the defendant, and to continue on his journey south on Thirty-sixth Street, then it became and was the duty of the plaintiff to stop his car, and not cause the same to be projected into the path of the defendant's car, blocking the south side of Ingersoll Avenue so that the defendant's car could not pass eastward on the south side of Ingersoll Avenue; and the failure to do so would constitute negligence. But, if the plaintiff, Barnes, in the exercise of ordinary care, believed, or if he, in the exercise of ordinary care, had the right to believe, that he could turn to the left on Ingersoll Avenue for the purpose of continuing his journey south on Thirty-sixth Street, and could clear said intersection in safety, he was not required to stop and wait for an approaching motor vehicle, and his failure so to do would not constitute negligence; and if you so find, the defendant would have no right of way over the plaintiff."

To this, also, the appellant has presented an exception.

If the paragraph had been limited to the statement of law contained in the second part thereof, it might very well be approved. The right of precedence at a crossing, whether given by law or established by custom, has no proper application, except where the travelers or vehicles on the intersecting streets approach the crossing so nearly at the same time and at such rates of speed that, if both proceed, each without regard to the other, a collision or interference between them is reasonably to be apprehended. In such case, it is the right of the one having the precedence to continue his course, and it is the duty of the other to yield him the right of way. But if a traveler not having such right of precedence comes to the crossing, and finds no one approaching it upon the other street within such distance as reasonably to indicate danger of interference or collision,

4. HIGHWAYS: Law of the Road.

he is under no obligation to stop or to wait, but may proceed to use such crossing as a matter of right; and this appears to be what the court said to the jury in the latter half of the instruction. Trouble arises, however, when we try to harmonize this declaration of law with the first part of the paragraph, where the court seems to tell the jury that, before plaintiff was under any duty to stop his car, and refrain from crossing in front of the defendant's car, it must be apparent to him that it was impossible to make such crossing in safety. It needs no argument in support of the proposition that this is not a sound rule of law. But we are quite certain the court did not intend to so instruct, and indeed, when carefully read, the instruction does not so say; yet we think it is evident that such is the interpretation that the average juror would put upon it. An inspection of the record indicates that the instruction, as given, had its origin in a request framed by counsel, and an attempt by the court to modify it in presentable form— an attempt which is rarely successful or satisfactory. We should hesitate to reverse the judgment on this ground alone; but, a new trial being rendered necessary for reasons stated in the last preceding paragraph, we call attention to this feature of the record, that the objection may be avoided, should the issues be submitted to another jury.

Further discussion of the case is unnecessary. The facts are not complicated, and the law pertinent to the issues is well settled. For the reasons stated in the second division of the opinion, the judgment below is reversed, and the cause remanded for a new trial.—*Reversed and remanded.*

PRESTON, C. J., GAYNOR and STEVENS, JJ., concur.