VERA D. PETTIJOHN, Appellee, v. WILLIAM H. HALLORAN, Appellant.

**ASSAULT AND BATTERY:** Civil Liability — Trespassers—Abortive
1 **Issue.** The plea in an action for personal injury that plaintiff was a trespasser on defendant's property presents no jury question when defendant neither pleads nor proves (1) that he had requested plaintiff to depart and that plaintiff had refused to do so, or (2) that any force was necessary to remove plaintiff,—in short, when defendant does not plead or show that he was ejecting plaintiff as a trespasser. (See Book of Anno., Vol. 1, Sec. 11493, Anno. 473 *et seq.;* Sec. 11508, Anno. 83 *et seq.*)

**PLEADING:** Future Pain—Sufficiency. Damages for "future" physi-
2 cal and mental pain may not be submitted to the jury under a pleading (1) which makes no specific reference to such damages, and (2) which expressly pleads that such pain continued for a stated period, to wit, three weeks. This is true even though the pleading alleges

that the injury alleged resulted in permanent, visible scars upon the "arm and wrist." (See Book of Anno., Vol. 1, Sec. 11111, Anno. 126 *et seq.*)

PLEADING: Amendment—Belated New Issue. Plaintiff may not
3  amend after verdict and inject into his petition for the first time a plea for "future mental and physical pain." (See Book of Anno., Vol. 1, Sec. 11182, Anno. 176 *et seq.*)

PLEADING: Sufficiency—Presumption. Principle reaffirmed that
4  it will be presumed that a pleader states a case as strongly as the facts will justify, and that nothing will be assumed in his favor except that which, upon a fair and liberal interpretation, is implied from his averments. (See Book of Anno., Vol. 1, Sec. 11111, Anno. 9 *et seq.*)

Headnote 1: 5 C. J. p. 634. Headnote 2: 17 C. J. p. 1022. Headnote 3: 31 Cyc. p. 404. Headnote 4: 31 Cyc. p. 81.

*Appeal from Polk District Court.*—O. S. FRANKLIN, Judge.

DECEMBER 15, 1925.

ACTION for damages for assault. Verdict and judgment for plaintiff. Defendant appeals.—*Reversed.*

*Chauncey A. Weaver,* for appellant.

*James A. Merritt,* for appellee.

MORLING, J.—The defendant attempts to justify on the ground that the plaintiff was a trespasser, and questions the right of the plaintiff to recover for future mental and physical suffering, and claims that the verdict is excessive. We first consider the evidence bearing upon these contentions.

The plaintiff, Vera D. Pettijohn, was, at the time of the alleged assault, fourteen years old. She was living with her parents in a house which she says was four feet from that of the defendant. The defendant had been annoyed by the children of the neighborhood, who entered his yard for the purpose of recapturing balls with which they were playing. On the occasion in question, the plaintiff and others were playing with a large soft ball. It fell in defendant's yard. One of the children testified:

"It rolled across the lot, and Vera ran to get it, and she ran around down on the sidewalk. She did not run very fast, and it rolled over in the alley, about two feet from the public sidewalk. She was reaching over to get it, and Mr. Halloran jumped off the porch and stooped under the wire and gave it a kick, and Vera started to give another leap after it with both hands, and got it, and he jumped on her right hand; and she seemed to get the ball in the left hand, and he stamped one foot on her hand and one on her arm; and she got away, and then he grabbed at her, and could not catch her; so he struck at her, and she got up and started limping home; and Laura went in and told her mother, and they came out, and Mrs. Pettijohn stood on the porch, and Vera started up, and she got up about to the second step, and she fell, and Mrs. Pettijohn said, 'Did you hurt my child?' Then he cursed her, and then Laura and Mrs. Pettijohn put her up on the porch, and they held her there, and she asked him, 'Mr. Halloran,' again; and he cursed her again. * * * Q. Now you say that he grabbed at her and struck at her. Where was she then,—getting up, or had she got up? A. She was on one knee; she was just getting up. She was just about up when he struck at her, grabbed at her, and could not catch her; so he struck at her. Q. What was she doing then? A. She was screaming, and her arm was all bleeding, and her hand."

Other witnesses corroborate this testimony. Plaintiff's witnesses say that the defendant on this occasion was white, and, on being upbraided by plaintiff's mother, told the mother "to keep her d—— brats out of his yard."

The defendant's version is:

"The ball bounced along on the grass and about 2½ feet from the steps, and over, and stopped in the car track [motor car] about 2½ to 3 feet under the wire that goes from the north corner of the porch. There is a heavy wire there, attached onto the post, and goes out along the driveway about 2½ feet off the main sidewalk, * * * and I got down off from the porch and followed the ball, just walked after it, and stooped under that wire; and just when I stooped, I heard somebody coming, but I never saw who it was of the children; but I could not see who it was until she got within, or just opposite this butt of the

tree * * * I could see it was her, and she rushed in on the middle of the driveway, between the tracks,—car tracks,—and made a grab for the ball, and that is the way she got hurt. Before I could straighten up, I saw she was determined to get it, and to make a fight to get it; so she straightened up, and she says, 'Look here, you hurt my hand; I am going home and tell my mamma.' And I put my fingers on her arm like that, and I says, 'That is all right, girlie, if you are hurt, run on out of here as fast as you can, and tell your mamma as much as you want, and tell your papa, too;' and I told her to stay out of my yard. 'I don't want you to come over here.' She still had the ball, and she walked on out * * * I did not strike Vera; never struck anybody in my life; would not strike a girl of her age wearing glasses; neither did I kick her. * * * The private driveway was a little lower than the lawn or ground, and that is where the ball stopped, and about 12 or 13 feet from the main sidewalk.''

An ambulance was called, and plaintiff was taken to the hospital. X-ray pictures were taken, which are not produced; but no claim is made of the existence of any fracture. The arm was dressed, bandages and splints were put on, and in an hour or two the plaintiff walked home. She says she had the splints on eighteen days. Her sister testifies that, the first two or three nights, Vera "cried most of the time; and when she did get to sleep, she could not sleep very well; and as time wore on, she got so she could sleep better, but it always bothered her. She gave these expressions of pain about a week after the splints was taken off. * * * there were large scars on her arm; it looked like where nails had scratched across her arm—was swollen after the splints were removed off two of her fingers. One swelled first, and got quite large. We didn't know what it was, and we took her to the doctor, and the doctor attended that; and about two weeks following, she had the other one swelled clear up to her arm, and she had that attended to, * * * the doctor lanced it. Some sort of a green matter and dark blood came out of it. When this swelling was going on in her hand, she cried most of the time at night. She cried about two or three days. She had to quit school because of it."

The mother testified to her having an abscess, "running into blood poison," swollen blue. She said the doctor had to open it.

She says the doctor treated it and opened it again on the other finger. It then was swollen and bruised.

"Q. The wound was not very large, was it?" A. It sure was."

The father says that, in the course of a few weeks,—"three or four,—the middle finger, I think it was,—kind of off on the inside like,—it began to swell up, just as the other did. She went to doctoring it again, and it seemed a little better. Of course she went back to school, and it began to hurt, and then the teacher put iodine on it, * * * and she came home and cried all night with it one night. Some few days after that, she came to me the next morning * * * I looked clear over to the elbow, all over the arm and on the back of the arm * * * On the inside, apparently along about the center, there was a kind of a little yellowish green, looking streaked, and the outside was red and inflamed,—swollen up to the elbow."

Only one doctor was called as a witness. He testified that Vera came in with a swollen finger. He found there was an abscess on the palm side. He lanced it, and some days afterwards it developed another abscess on another finger, which was treated and lanced, and antiseptics applied. He says such abscesses usually follow an infection from an abrasion of the skin.

Vera testified:

"How long did you feel that aching and paining? A. About—pretty near a week afterward. Q. Did it quit paining you finally? A. No, didn't quit paining, and kept on paining, but did not pain half so bad after a week. Q. How long did it continue to pain at all? A. It didn't pain until after he took the splints off my arm. When I lift anything heavy, right in between here is where my hand hurts. It hurts yet. Q. Now were there any marks on your hand or arm after he took the splints off? A. Yes. I got the marks on my arm now. * * * Q. Let me see. A. There is one down there, and it is all red here, and my fingers here, and here is one place, and here is another up here. These two fingers has another, and my hand where I had it split after he kicked it."

I. Defendant pleaded that:

"Plaintiff was a trespasser on the property of the defendant, and is therefore barred from any right of recovery."

The defendant does not claim, nor does the evidence show, that he was ejecting the plaintiff as a trespasser, nor that he had previously requested her to depart, nor that she refused, after a reasonable time, to do so. He does not claim, and it is not shown, that the assault was made in defense of his right of possession of his property, nor that the application to the plaintiff of any force was necessary. This defense was properly withheld from the jury. *Scribner v. Beach*, 4 Denio (N. Y.) 448 (47 Am. Dec. 265); *Redfield v. Redfield*, 75 Iowa 435.

1. ASSAULT AND BATTERY: civil liability: trespassers: abortive issue.

II. The court permitted the jury to award the plaintiff such sum as would compensate her for physical and mental pain, "including any disfigurement she may have, she has suffered of said injuries in the past and to the present time; and the present worth of the damages, if any, as you find from the evidence she will be reasonably certain to sustain in the future, as the result of physical pain and suffering and mental anguish." The court told the jury that by "present worth" was meant such a sum as, being paid presently, the jury might find would "award just and reasonable compensation for the damages the plaintiff will, with reasonable certainty, sustain in the future."

2. PLEADING: future pain: sufficiency.

The petition stated that the defendant inflicted great bodily injury upon the plaintiff, and fractured or sprained her right arm, and badly injured her right hand, "leaving great scars and bruises and flesh wounds thereon, which later developed into permanent scars upon her said right arm and wrist, whereby it was necessary for the plaintiff to be taken to the hospital and have her arm dressed and placed in splints for a number of days. That plaintiff suffered great pain and mental anguish and distress for a long period of time, to wit: three weeks immediately following said assault by the said defendant. * * * That the plaintiff has been damaged by reason of said assault as follows:

"To pain and suffering from said injuries.....$ 5,000.00
"To injury to plaintiff's right arm and visible scars caused by the said defendant................ 15,000.00
"That plaintiff has sustained the total damage as aforesaid in the sum of......................... 20,000.00

"All of which said damage is now wholly due, and no part thereof has ever been paid.

"Wherefore plaintiff demands judgment against the said defendant for twenty thousand ($20,000.00) dollars, together with interest and costs of this action."

During the trial, plaintiff amended by alleging malice, and asking $1,000 additional, as exemplary damages.

The jury returned a verdict for the plaintiff for $750. The defendant filed exceptions to the instructions referred to. Eleven days later, and more than two weeks after the judgment, plaintiff filed an amendment that would add to the petition future suffering as one of the elements entering into the amount of the damages claimed.

If the original petition was not sufficient to entitle the plaintiff to an allowance for future suffering, it was error to permit the jury to take such into account. The defendant had not had his day in court upon any such issue, and the error could not be cured by an amendment to the petition filed after verdict. *LeMars Bldg. & Loan Assn. v. Burgess*, 129 Iowa 422.

3. PLEADING: amendment: belated new issue.

Was the original petition broad enough to allow plaintiff to recover future damages, or specifically for future physical and mental pain? We think not. There is no express reference in the petition to future suffering of any sort. The allegation is that the plaintiff "suffered great pain and mental anguish and distress for a long period of time, to wit, three weeks immediately following said assault by the said defendant." This excludes the idea that plaintiff suffered pain after the three weeks, or that she would continue to suffer such pain in the future. The specification "to pain and suffering from said injuries $5,000" could hardly, even by the extravagance of the amount, be construed into an allegation of other pain and suffering than that to which the petition by its terms had previously been limited.

The petition alleges that defendant "fractured or sprained her right arm and badly injured her right hand, leaving great scars and bruises and flesh wounds thereon, which later on developed into permanent scars upon her said right arm and

wrist, whereby it was necessary for the plaintiff to be taken to the hospital and have her arm dressed and placed in splints for a number of days." This allegation immediately precedes that previously quoted; and here, too, is apparently a restriction upon the nature of the injuries claimed. The specification "to injury to plaintiff's right arm and visible scars caused by the said defendant, $15,000," we think is not sufficient to inform the defendant that plaintiff was claiming for future mental suffering on account of a permanent disfigurement of her person. The word "visible" does not add much to the word "scars." It would be difficult to imagine a scar upon the arm that was not visible. Permanent scars upon the arm and wrist are not, of themselves, and from the mere fact of their existence, productive of future pain, either physical or mental. It does not follow, because there are scars upon the wrist and arm, and because they are visible, that they are so apparent or obvious as to attract attention, or even be especially noticeable.

The practice in this state with respect to the sufficiency of pleadings is liberal, "* * * and allegations which direct the attention of the court with reasonable certainty to the facts upon which the prayer for relief is based are ordinarily held sufficient." *Conner v. Baxter,* 124 Iowa 219, 225. At the same time, "* * * even under a code, while pleadings are to be liberally construed, and the pleader given the benefit of every allegation made or reasonably implied from the language employed, the principle at the base of the ancient rule, that the party is presumed to have stated his case as strongly as the facts will justify, still prevails. * * * In other words, nothing will be assumed in favor of the pleader which has not been averred, or may not, upon a liberal and fair interpretation, be implied from his averments." *Witham v. Blood,* 124 Iowa 695, 698. Our former pronouncements on the specific question now before us are in harmony with these expressions. *Shultz v. Griffith,* 103 Iowa 150; *Kircher v. Town of Larchwood,* 120 Iowa 578; *Palmer v. City of Waterloo,* 138 Iowa 296; *Worez v. Des Moines City R. Co.,* 175 Iowa 1; *Evans v. Elwood,* 123 Iowa 92.

Furthermore, we think that the evidence fails to show with any reasonable certainty that the scars do so disfigure the plain-

4. PLEADING: sufficiency: presumption.

tiff, or are noticeable or apparent, so as to cause her any suffering on account of them. Certainly there is no evidence that would warrant a finding that there will be any future physical suffering because of the injuries. Her statement that, when she lifts anything heavy, "right in between here is where my hand hurts,—it hurts yet," we think is too vague and tenuous, as to cause, nature, or extent, to serve as the basis of an assessment for future damages. No effort was made to show, by expert evidence or otherwise, that any permanent morbid condition existed. *Elzig v. Bales*, 135 Iowa 208. The trial court was in error in permitting the jury to consider the possibility of future suffering.

IV. The jury was permitted to take into account an element of damage not sustained by the pleading or evidence, and consideration of the question whether the verdict returned was excessive would be fruitless.

The judgment is—*Reversed.*

FAVILLE, C. J., and EVANS and ALBERT, JJ., concur.