MINNIE SHUCK, Appellee, v. P. E. KEEFE, Appellant.

FEBRUARY 14, 1928.

*Robert B. Pike* and *Larned F. Brown*, for appellant.

*Milchrist, Jepson, Marshall & Jepson*, for appellee.

DE GRAFF, J.—This is a personal injury case. Liability in damages is predicated on the negligence of the appellant in the operation of his automobile. The plaintiff was awarded a verdict. The reversible error relied upon by appellant has to do with (1) overruling defendant's motion for a directed verdict, (2) overruling defendant's motion for new trial, and (3) the giving of certain instructions to the jury. In determining the correctness of the rulings on the motions aforesaid, attention must be given to the factual side. We will turn first, however, to the material allegations of the petition and answer.

The negligence pleaded by plaintiff is that the defendant, in the operation of his car at the time and place in question, violated the speed ordinance of the city of Sioux City (that is, in excess of 20 miles per hour); that he drove his car at a high and dangerous rate of speed, to wit, 40 miles per hour; and that the defendant failed to keep a lookout for other cars upon said street or intersecting streets. The defendant answered by a general denial, and further alleged that the plaintiff's car came suddenly and without warning upon the intersection where the collision occurred, and that, to avoid striking the car in which plaintiff was riding, the defendant attempted to turn to the right, with the result that the car in which the plaintiff was riding ran into and hit the defendant's car on the left fender. Defendant pleads contributory negligence on the part of the plaintiff, in that plaintiff failed to keep a proper lookout, and that, as defendant's car was approaching said intersection, the plaintiff approached the intersection at a high and dangerous rate of speed, and, without having the Ford car under control, and without reducing his speed to a reasonable rate, carelessly and negligently attempted to cross the said boulevard without first ascertaining that it would be safe to do so, and, in violation of

the laws of Iowa, failed to yield the right of way to defendant's car, approaching said intersection from the right.

The facts, briefly stated, are as follows: On November 29, 1925, about 10 o'clock A. M., the appellee was riding as a passenger with her husband in a Ford touring car driven by her husband on Clifton Avenue (a dirt road), in Sioux City, Iowa. The Ford was traveling in an easterly direction, and when the car was within a short distance of the intersection with Stone Park Boulevard (a paved street), appellee looked to the right, and saw a car approaching the intersection from the right, moving in a northerly direction. The appellee testified:

"The Keefe car must have been about two blocks away when I first noticed it,— maybe two or three blocks. We were closer to the intersection than Dr. Keefe's car when I saw his car. I had nothing to do with the driving of the car that morning. I gave him no directions how to drive or what road to take. I don't recall anything there to obstruct the view. I do not know the speed of our car. We were across the paving when we were hit. We were not very far across."

Harry Shuck, the husband of the appellee, testified that, when he approached the intersection, he looked to see if there were any other cars coming, and:

"I saw this car [Dr. Keefe's] approximately two blocks away. At that time I was on Clifton Avenue. I was possibly fifty feet from the paving when I first saw the Keefe car. I would imagine that Dr. Keefe was two blocks away when I first saw him. This was after we had slowed down for the crossing, and I figured we had plenty of time to get across. I looked up and down the street before I crossed the pavement. I saw a car coming. That car was about two blocks away, on Stone Park Boulevard. I drove across the street. We were on the east side of the pavement, headed east, when we got hit. We had crossed the pavement. We were clear over on the other side of the paved part of the street. A big Packard twelve touring car hit us. The Packard hit our car right between the two doors. I should judge my car was struck and knocked about ten feet. When we came up to the intersection of Stone Park Boulevard and Clifton Avenue, I was driving possibly between 15 and 18 miles an hour. I slowed down before I came to the pavement. I went across the intersection approximately 18 miles an hour,—

not over 20.   Dr. Keefe's car was in plain sight of us at all times from the time I first saw it until the time of the accident. I saw it about 50 feet from the intersection, and I saw it just as it headed towards me; and I was across the intersection then, but I couldn't miss it.   I saw it when it left the paving,—that is where I saw the car again.''

A wholly disinterested person, Mrs. George J. Brown, a stranger to all parties involved, testified that, on the morning in question, she was driving her automobile, and was about one fourth of a block behind the Keefe car.

''The Keefe car passed me, and that is when I noticed the speed he was going.   When he passed me, it was about three fourths of a block from the place of the accident.   I have a speedometer on my car.   When he passed me, I was going about 25 miles an hour.   I have driven a car for about three and a half years.   From my experience I am able to tell how fast a car is going.   I should judge that Dr. Keefe was going, at the time he passed me, about 50 miles an hour.   I saw the cars strike.   The accident was about 15 or 20 feet off of the pavement.   Dr. Keefe turned off the pavement to the right.   He was on the east side of the intersection when he went to turn out. That is when he pulled off to the right.   The Ford car was jammed against the telephone pole.   I should say that it was around 20 feet from where it was hit and then thrown against the telephone post by the Packard car.   I think it was about 20 feet from where it was struck to where it landed.''

Mrs. Brown also testified:

''A car going in a northwesterly direction on Stone Park Boulevard could see the Shuck car on Clifton Avenue.   A car traveling on Clifton Avenue toward Stone Park Boulevard could not see a car on Stone Park Boulevard when the car on Clifton Avenue was back a block.   I should judge he could see all right 50 feet from the intersection.''

The defendant testified that, at the time he entered the intersection, he was traveling about 25 to 30 miles an hour, and was able to stop his car within a car's length.   The doctor also testified that, in his judgment, the plaintiff's car was going about 25 or 30 miles an hour,—''equally as fast as my car.   It made no pretense toward stopping.   That is why I eased over toward the right of the pavement, figuring—now if he is com-

ing like that, he is figuring on coming up the pavement; and then I slowed down, when I saw he was entering the intersection, and you might say he rolled right up on my car. My car was in the intersection first.''

Clearly, a fact question was presented on the issue of the alleged negligence of the defendant and the contributory negligence of the plaintiff.

We now turn to the instructions of the court against which complaint is lodged. One of these instructions has to do with the proposition involving the right of precedence at an inter-section. A similar instruction was approved in *Barnes v. Barnett,* 184 Iowa 936, presently noted. Under the facts of the case at bar, it was for the jury to determine the speed at which these two cars were traveling prior to the collision. It was for the jury to determine what the relative position of the two cars was when they approached the intersection, and whether or not, had the Packard remained on the pavement, it would have safely passed to the rear of the Ford.

The court also instructed that a party approaching a crossing and not having the right of way is required to exercise reasonable diligence to ascertain if another, with a right over the crossing superior to his, is approaching; and if the view is obstructed, in whole or in part, he is required to exercise proportionately greater diligence than if unobstructed. In other words, he is bound to approach the crossing on the lookout, prepared to yield the right of way, if necessary, to a car coming from his right; but in approaching such crossing, a traveler may assume that one approaching on a highway is traveling at a lawful rate of speed, unless from his observation he is apprised to the contrary; and likewise, a traveler approaching a crossing under circumstances entitling him to the right of way may assume that a traveler upon the intersecting highway will comply with the law, and grant him the right of way, unless, from all of the circumstances, and his observation, he is apprised to the contrary. We discover no error in this statement of the law supplemental to the challenged instruction.

Rules of the road prescribed by statute must be read in the light of the facts and in the light of common sense. The right of precedence at a crossing, whether given by law or established

by custom, has no proper application, except where the vehicles on the intersecting street approach the crossing so nearly at the same time and at such rates of speed that, if both proceed, each without regard to the other, a collision between them is reasonably to be apprehended. If a traveler not having such right of precedence comes to the crossing and finds no one approaching it upon the other street within such distance as reasonably to indicate danger of collision, he is under no obligation to stop or wait, but may proceed to use such crossing, as a matter of right. *Barnes v. Barnett*, supra. This is the law that was stated to the jury in the challenged instruction in the instant case. We re-affirm its correctness. See, also, *Carlson v. Meusberger*, 200 Iowa 65; *Roe v. Kurtz*, 203 Iowa 906.

Another instruction upon which error is predicated is that the court improperly submitted to the jury an issue of the permanent injuries of the appellee. This element of damage was  pleaded. Was it sustained by the evidence? There can be no quarrel with the rule that recoverable damages for permanent injury or for future pain and suffering must be such only as are reasonably certain. *Young v. Mandis*, 191 Iowa 1328; *Duncan v. Iowa R. & L. Co.*, 194 Iowa 469; *Wilkinson v. Queal Lbr. Co.*, 203 Iowa 476.

No evidence sufficient to sustain the issue of permanent injury was offered by the plaintiff. The medical witnesses called by the defendant, including an X-ray specialist, testified that, in their opinion, there were no injuries of a permanent character. The X-ray pictures disclosed nothing that indicated any permanent injury to the right sacroiliac articulation, nor any abnormalities about the pelvic region. Plaintiff alleged injuries of this nature in her petition, and the trial court in the statement of the issues included these matters. This should not have been done, as there was no evidence to sustain the claim. The plaintiff's medical witness, an osteopathic physician, last examined the plaintiff on February 9, 1926, about nine months before the trial of the cause. The physician was asked:

"What will be her [plaintiff's] condition in the future, as to whether she is—as to whether it will be some time before she is completely recovered?"

The doctor, over objection, was permitted to answer:

"Well, that is something that you can't tell. No two people are alike. Q. Your best judgment, doctor, based on your experience? A. I would say that would be in the realm of guesswork; that I can't tell. Q. That is, that she might or might not be permanently injured? A. Yes."

Doctor Charles T. Maxwell, on behalf of the defendant, testified that, "from my examination of this plaintiff, in my opinion there is no probability of permanent injury;" and that he found nothing that would indicate to him any permanent injury or abnormality in or about parts of plaintiff's body claimed by her in her petition to be injured. Dr. Maxwell's examination of the plaintiff was in September, 1926, about one month before the trial. Dr. R. F. Bellaire, an X-ray specialist called by the defendant, corroborated the opinions expressed by the other medical experts.

The trial court did instruct the jury that, in estimating the damages, if any, recoverable by plaintiff, "the injury to plaintiff's person, whether the same is permanent or not," could be taken into consideration, and also "the pain and suffering and mental anguish that the evidence renders reasonably certain that she will endure in the future." The only testimony offered by the plaintiff on this proposition was her purely subjective symptoms. There was no evidence by experts that corroborated her claims. There was no evidence as to whether the injuries are incurable, or, if curable, the probable time it would take to effect a cure. The very nature of this claim required that the plaintiff present proof of expert witnesses. It is said in *Shawnee-Tecumseh Traction Co. v. Griggs*, 50 Okla. 566 (151 Pac. 230):

"If this witness, skilled in the medical profession, with every opportunity of knowing all the facts relative to plaintiff's injuries, states that he did not know whether the injuries were permanent or not, it was certainly most unreasonable to require a jury to take indefinite and uncertain testimony, and therefrom to find that there was a reasonable certainty that plaintiff would or would not suffer future pain which was the clear and logical result of the injury."

The mere statement by the plaintiff that she still suffers pain is not sufficient *per se* to warrant a finding that there will be any future physical suffering because of her injuries. *Pettijohn v. Halloran*, 200 Iowa 1355. See, also, *Louisville & N. R.*

*Co. v. Eaden,* 122 Ky. 818 (93 S. W. 7, 6 L. R. A. [N. S.] 581).

One other matter may be briefly noted. Upon the cross-examination of the appellant, counsel for appellee asked this question: "You were the driver of a car that ran over a girl, some years ago, were you?" A proper objection  to this question was sustained. The forbidden field was almost immediately re-entered by counsel, by asking the question: "Did you say you hadn't any previous accidents?" The trial court sustained objection to the last question. Counsel for plaintiff then remarked, in the presence of the jury:

"The counsel here has attempted to qualify his witness on direct examination as to how good a driver he is, and I think I want to show whether he is a good driver, as a matter of fact."

Counsel for appellant then made the following motion:

"Now at this time, on account of the improper and prejudicial conduct on the part of the counsel for the plaintiff in attempting to bring out improper matter, we ask that this case be continued."

This motion was overruled, and an exception noted.

Some poison was injected into the record, and the repetition, in substance, of an improper question, under the circumstances of this case, may be viewed as prejudicial. In the asking of the first question, appellee was on the boundary line of the danger zone. The second question accentuated the toxic effect of the first. An antidote for poison of this character is not always at hand. The appellant thought he had one, but in the application it failed. See *Quillen v. Lessenger,* 190 Iowa 939; *Vanarsdol v. Farlow,* 200 Iowa 495; *Rudd v. Jackson,* 203 Iowa 661.

For the reasons indicated, the judgment entered is—*Reversed.*

STEVENS, C. J., and ALBERT, MORLING, and WAGNER, JJ., concur.