H. L. TINLEY, Administrator, Appellee, v. CHAMBERS IMPLEMENT COMPANY et al., Appellants.

No. 41251.

JUNE 24, 1932.

OPINION ON REHEARING JUNE 20, 1933.

Kimball, Peterson, Smith & Peterson, A. G. Kistle, and H. C. Churchman, for appellants.

Tinley, Mitchell, Ross & Mitchell, for appellee.

KINTZINGER, J.—This case was originally before this court and a reversing opinion rendered in Tinley v. Chambers Implement Co. et al., 243 N. W. 381. A rehearing was granted and that opinion is hereby withdrawn.

The only question raised in this case is whether or not the deceased was guilty of contributory negligence as a matter of law.

The collision occurred after dark November 11, 1930, on high-way No. 32, at or near the intersection of said highway with a private road entering thereon from the home of one Koester. Deceased left the Koester home at night and was driving to his own home some distance east on highway No. 32.

Highway No. 32 runs east and west and is 18 feet wide with a 5-foot shoulder on each side. The Koester home is about 233 feet north of highway No. 32 and the private drive therefrom to the highway runs north and south. At the south end of the driveway it spreads out in a fan shape at its junction with No. 32. The private driveway is generally about 15 feet wide, and 28 feet wide where it joins with No. 32.

The evidence shows that an automobile, traveling on any part of the private drive from the Koester home to the highway, is visible to persons on highway No. 32 for a distance of at least 1,000 feet east of the intersection. The headlights on both the car and the truck were lit. There was also a spotlight on the truck. The truck was traveling from 40 to 50 miles an hour. The deceased at the time he was driving his Ford coupé onto the paving was traveling about 5 miles an hour.

Appellants contend that the deceased drove his car onto the paving without stopping, came directly into the path of the on-coming truck, and was struck by the truck on the intersection while on the north side of the pavement. Appellants' contention is sup-ported by the testimony of the driver of the truck and the testimony of a witness who was driving a car a few hundred feet behind the truck.

The deceased did not stop before entering the paving, but the appellee contends that he drove across to the south half of the paving, had turned his car easterly thereon, and was 40 or 50 feet east of the intersection at the time of the collision.

As a result of the collision the decedent's car landed north of the pavement and about 10 feet west of the Koester driveway. The truck stopped about 200 feet west of the driveway on the south side of the pavement. Powell's body was found about 60 feet west of the intersection with blood all around his head. One of the vital questions in the case was the location of the cars at the time of the impact. The witness Koester saw the collision from the window of the southeast bedroom of his home. He testified that he saw the deceased driving his car when he got almost on the highway.

He testified "he (Powell) went up the grade in low gear. I judge he was going five to seven miles an hour. I was watching the highway as he drove onto that highway. He drove straight out on the pavement. I noticed the lights of the truck coming from the east. I next saw him on the pavement when he was about fifty feet from the truck. He was driving east on the highway. After I saw the truck coming west I continued to watch the truck come on. As it got within one hundred feet of where they collided he seemed to throw off to the south and kept going off until the collision. John Powell was about forty feet east of the driveway. I could see the lights on his car shining ahead. There was a big flash as though there was an explosion, glass flying all over. Before the collision the lights of that truck were going west and possibly a little south. My brother and I ran down the road with a lantern. We saw an object lying on the south side of the highway about 35 or 40 feet east of the driveway and my brother said 'is that a body there' and I said 'no that is a part of the car.' As we went by with a lantern it looked like a door of the car. Later we found the object that was lying forty feet east of the highway was the door of John's (decedent) car. I then went back to see if John was in the car. The truck was lying about the middle of the south side of the highway. John's car was just west of the driveway about 10 feet. We found John laying there on the north side of the road about 60 feet from the driveway. He was unconscious, there was blood all around his head. He never regained consciousness. The next morning we went down to the road and inspected the marks on the road. There were marks east of the driveway—abrasions. I found one rather deep mark about four feet long, another one just slightly smaller on the highway south and east of the driveway. The next morning I saw some scratches on the highway. There was still some glass mostly to the south about the middle of the south half of the highway, about 35 feet east of the driveway. There were scratches and marks on the pavement. About directly south of the driveway, possibly a little east, there was a dark black mark about 3 feet from the south side of the highway about four inches wide. It looked like burnt rubber marks. These black marks on the highway were about 40 or 50 feet long and ended about 40 feet west of the driveway and on the north side of the highway. I saw the truck the next morning. On the left hand side the bolts or plates were sheared off all the way along, and paint was off the side of the truck. The front bumper was broken

off on the right hand side. It was fastened on the frame of the car with rivets, and they were sheared off, and the wheel was shoved back and injured on that side. On the Powell car the radiator was pushed back over the engine and to the left, and the left part of the spindle or axle was bent back a little and the radius rod was broke loose from the engine, and the back part of the front end was still on but the back part was broken loose. There were no dents on the left side of the Powell car from the running board back. When I first saw the truck, as it came west on highway No. 32 in my judgment it was about 260 feet east from the driveway. At that time my best judgment is that Mr. Powell's front wheels were right on the paving or at the paving, I couldn't tell. At the time the collision occurred, I judge Powell's car was about 35 feet east of the driveway, possibly 40 feet. As it came down the road the truck gave way to its left to the south side of the road and it seemed as though at that time it picked up speed. Mr. Powell's body was found about 115 feet from the place where the collision occurred. At the time the two cars came together Powell's car *wasn't* still turning. I could see that plainly. Just before the crash I could see the outline of the body of the Ford because of the light that was thrown upon it. The next time I saw the lights of those cars it (Powell's car) was about 35 feet east of the driveway. The lights shining mostly east and possibly a little to the south."

J. H. Koester testified, "I saw blood spots where John's body lay to the end of the scratches. The scratches on the paving began thirty to thirty-five feet east of the driveway. There was glass to the east of that on the south side."

Witness Burmeister said, "When I arrived I observed a door of the Powell car laying in the middle of the south half of the slab, about 35 feet east of the Koester driveway. I stopped because there was so much glass lying there of every kind. The abrasions (on the pavement) started about where the door was and then in a north-westerly direction to where Powell's car was. I saw blood where they picked Powell up on the north side of the highway. There were scratches from where Powell's body lay in a westerly direction a couple hundred feet, probably eight to sixteen feet wide, in places, to where the truck laid. I first observed the lines of blood where the door was on the south side of the highway. They then went north-westerly and moved on to the north side. In driving my car I

straddled the door and went over some glass. I made the measurements and it was 35 feet east of the driveway. The door I saw was in the center of the south half of the pavement."

Fred Hanson testified that he drove down the Koester driveway and turned onto the paving and saw something lying in the road. He said, "It seemed it was a piece of a car and I could straddle it and would drive over it. It was the door of the Powell car. I thought it was 35 to 40 feet east of the driveway to the south side. There was some glass all around there, some east of the door. The next day I seen some marks on the pavement east of the highway deep scratches about 35 feet east. I saw glass around these marks and around the door. These marks extended about 50 feet east of the driveway and were 18 to 20 inches wide. They were on the south side. I saw blood stains there. They led west up the pavement about 100 feet and to where there was a big puddle of blood, northwesterly."

The witness Suramitt, a patrolman on this highway, drove to the scene of the accident and said, "I found glass east of the Koester driveway, the bulk of it about 35 feet east of the south half of the pavement. The next morning I found scratches on the pavement running north and west commencing about 35 to 40 feet east of the driveway on the south half and extended northwesterly. I saw blood stains at the point where the bulk of the glass was. They extended in the same direction as the marks did. The blood stains went to where John's body was found, next to the curb."

Witness Owens, a deputy sheriff, testified as to the finding of the handle of the door about 33 feet southeast of the driveway.

Section 5035 of the Code, requiring vehicles coming from private drives to stop before entering a public highway does not apply to this case, because it refers to cases where the view of the driver approaching the highway is obstructed. The undisputed evidence here shows that the view of the deceased as he approached the highway was open and unobstructed for at least 1,000 feet. For this reason the statute does not apply. Carstensen v. Thomsen, 215 Iowa 427, 245 N. W. 734.

Section 5079-b2 gives the traffic on arterial highways the right of way over the traffic on any other highway intersecting therewith. It is therefore claimed that driver of defendant's truck had the right

of way on approaching the intersection. A driver of an automobile is not necessarily guilty of contributory negligence in driving onto an intersecting arterial highway from a private drive, in front of one approaching the intersection some distance away, if under the circumstances it is reasonably apparent to him that he can enter the highway in safety. Barnes v. Barnett, 184 Iowa 936, 169 N. W. 365, 367; Shuck v. Keefe, 205 Iowa 365, 218 N. W. 31; Roe v. Kurtz, 203 Iowa 906, 210 N. W. 550; Wolfson v. Jewett Lum. Co., 210 Iowa 244, 227 N. W. 608, 230 N. W. 336; Hartman v. Red Ball Trans. Co., 211 Iowa 64, 233 N. W. 23.

In Barnes v. Barnett, supra, we said:

"The right of precedence at a crossing, whether given by law or established by custom, has no proper application, except where the travelers or vehicles on the intersecting streets approach the crossing so nearly at the same time and at such rates of speed that, if both proceed, each without regard to the other, a collision or interference between them is reasonably to be apprehended. In such case, it is the right of the one having the precedence to continue his course, and it is the duty of the other to yield him the right of way. But if a traveler, not having such right of precedence, comes to the crossing, and finds no one approaching it upon the other street within such distance as reasonably to indicate danger of interference or collision, he is under no obligation to stop or to wait, but may proceed to use such crossing as a matter of right."

In that case we said, what may be well said here:

"It may be admitted that, had the jury found the plaintiff chargeable with contributory negligence, and therefore not entitled to recover, the verdict would have ample support in the testimony; but the existence of contributory negligence is peculiarly a jury question, and in our judgment the record does not reveal one of those cases where the evidence is so undisputed and convincing as to make the question one of law."

There is evidence in this case from which the jury could find that defendants' truck was 260 feet east of the crossing at the time the deceased was entering the highway. If from this and other facts and circumstances they could reasonably find that the defendants' truck was of such a distance away that it was reasonably apparent

to him that he could make the crossing in safety, then he would not be guilty of contributory negligence.

An important question for determination was the location of the defendants' car at the time of the collision. The defendants contend that the impact took place at the crossing while the decedent was driving over to the south side of the pavement. The plaintiff's contention is that the decedent had already reached the south side of the paving and was driving in an easterly direction thereon at the time of the collision. Mr. Koester, an eyewitness, said the deceased had reached the south side of the highway, had left the intersection, and that his car at the time of the collision was from 40 to 50 feet east of the intersection. This testimony was corroborated by evidence of physical facts showing the location of the car to be east of the intersection at the time of the collision. The undisputed evidence shows the existence of a lot of glass on the south side of the highway about 35 or 40 feet east of the driveway; the finding of the door of decedent's car about 35 feet easterly of the driveway on the south side of the paving, and the finding of the handle of the door about 33 feet southeast of the driveway; also the existence of blood stains about 35 or 40 feet east of the intersection on the south side of the paving extending from that place to the body of John Powell. Deep scratches and marks were seen on the pavement about 35 feet east of the driveway and extended from about 50 feet east of the driveway; that these marks, scratches, glass, blood stains, the door, the handle of the door were all found on the south side of the highway No. 32 about 35 to 40 feet east of the intersection.

Mr. Koester testified that when the decedent's car reached the pavement the truck was 266 feet east of the intersection. This would be an ordinary block away. If the point of collision was 35 or 40 feet east of the intersection, and the Ford car was traveling 5 miles an hour, and the truck 50, it was traveling ten times as fast as the Ford. If the Ford continued at 5 miles an hour to the place of the collision, the truck would have traveled 350 or 400 feet in the same time. But making allowance for an increased speed of the Ford after it entered the highway, this evidence demonstrates the correctness of Koester's estimate that the truck was at least 260 feet east of the intersection at the time the decedent entered the paving.

From the testimony offered it is apparent that the question of the location of the Powell car at the time of the impact must have been for the jury. If they could reasonably find from the evi-

dence that the Powell car was on the south side of the highway and 35 or 40 feet east of the driveway at the time of the impact, and if they could reasonably find, from the evidence, that at the time the decedent entered the intersection the truck was such a distance away that decedent was in the exercise of ordinary care in believing that he could get on to the south side of the highway without danger of a collision, the question of contributory negligence must have been one for the jury. Under the record in this case we can reach no other conclusion than that this case was properly submitted to the jury.

The lower court therefore did not err in overruling defendants' motion for a directed verdict and the judgment is therefore affirmed. —Affirmed.

KINDIG, C. J., and STEVENS, MITCHELL, and DONEGAN, JJ., concur.