HARRY H. DONNELL, et als., Admrs., *vs.* G. G. DEERING COMPANY.

Sagadahoc.   Opinion April 17, 1916.

*Evidence of custom.   Rights of mortgagees of shares of vessel property.*
*Rights of mortgagor and mortgagee as to recovering for damage done*
*to mortgaged property.   Rule as to dividends earned by vessel*
*property.   Usage or custom in transferring shares of vessels.*

1. A chattel mortgage carries the whole legal title to the property mortgaged to the mortgagee conditionally, and if the condition is not performed the mortgagee's title becomes absolute at law.   The only right remaining to such a mortgagor is the equity of redemption.

2. If while the property is in the permissive possession of the mortgagor it is damaged by a third party the mortgagee is entitled to the damages.

3. The right of a mortgagee to have the damages for injuries to the mortgaged property itself is incident to his title to the property; it does not depend upon his possession, or right to the possession of the property at the time of the injuries.

4. A general and well recognized custom and usage in the sale and purchase of vessel property, that when shares in a vessel are sold and the ordinary bill of sale thereof is given without any condition or reservation the buyer takes the shares "debits and credits," is neither contrary to established principles of law, nor repugnant to the contract of the parties, and is not unreasonable.

5. While a mortgagor of 71-128th. of a vessel still held the right to redeem those shares the vessel was materially damaged in a collision.   After the mortgages had been fully foreclosed and the mortgagees had sold and transferred the shares to other parties, the then agent for the vessel compromised the collision matter receiving substantial damages which he distributed to the then owners of the vessel.   *Held,* that, in an action by the administrators of the estate of the mortgagor against the agent of the vessel to recover 71-128th. of the net amount received by the agent in settlement of the collision matter, the plaintiffs are not entitled to recover.

Action of assumpsit under a count for money had and received to recover certain money claimed as due the plaintiffs.   Defendant filed general issue and brief statement.   Case reported to Law Court for final determination upon so much of evidence as legally admissible.   Judgment for defendant.

Case stated in opinion.

*Joseph M. Trott,* for plaintiffs.

*McGillicuddy & Morey,* for defendant.

SITTING: SAVAGE, C. J., CORNISH, KING, HALEY, HANSON, PHIL-BROOK, JJ.

KING, J. This action for money had and received comes up on report. The material facts are these:

William T. Donnell in his lifetime was the owner of 73-128ths of the schooner Alice M. Colburn, and on December 1, 1905, he mortgaged 65-128ths of said schooner to the Lincoln National Bank of Bath, Maine, to secure $16,000. That mortgage was transferred to the First National Bank of Bath. Mr. Donnell, the mortgagor, acted as agent for the vessel until his death. He died in October, 1910, and the plaintiffs are the administrators of his estate. In the early part of March, 1911, the Colburn was materially injured in a collision with the steamer Trafalgar. March 8, 1911, the bank began foreclosure proceedings of its mortgage and the foreclosure became complete May 9, 1911. Soon after that the defendant became agent for the Colburn, succeeding the plaintiffs who had acted as agent since the death of the mortgagor. June 30, 1911, the administrators of the estate of Wm. T. Donnell (the mortgagor) executed a bill of sale to the bank of the 65-128ths of the schooner. They claim it was not delivered until November following. It was given apparently to perfect, if necessary, the bank's title under the foreclosure.

At the time the defendant became agent for the Colburn she was in debt $3127.83 including a balance of $1500 on the repair bill of $2500 occasioned by the collision. September 14, 1911, the defendant rendered an account showing the net indebtedness then to be $1696, and asked the owners to send checks for their respective portions of that deficit. The bank paid the assessment on its 65-128ths. The plaintiffs did not remit for the assessment on the remaining 8-128ths, but that was liquidated by the application of subsequent dividends. October 18, 1911, the bank sold at auction the 65-128ths to the defendant for $11,200. The bill of sale of the same was dated November 29, 1911.

Of the other 8-128ths of said vessel, owned at one time by Wm. T. Donnell, 6-128ths were mortgaged to the Peoples Safe Deposit and Savings Bank of Bath. That mortgage was foreclosed by proceedings commenced November 22, 1911, and the foreclosure became complete January 22, 1912. On February 13, 1912, the Bath Trust Company, receiver of the Peoples Safe Deposit and Savings Bank, sold and conveyed those 6-128ths to G. G. Deering. The estate of Wm. T. Donnell then had left 2-128ths of said vessel. On or before August 1, 1912, the defendant as agent for said vessel settled by compromise the Trafalgar collision matter receiving in gross $4600, and gave credit to the vessel for the same in its dividend statement of August 1, 1912. It sent the plaintiffs such a statement with a check for the dividend on their 2-128ths.

In this action the plaintiffs claim to recover 71-128ths of the net amount which the defendant received in settlement of the collision matter, which net amount they claim is $3211.50, being the difference between the $4600 received and $1388.50 paid out for fees and expenses in that particular matter. They base their claim to recover on the contention that inasmuch as the collision occurred while the estate of Wm. T. Donnell owned the equity to redeem said 71-128ths from said mortgages, that estate is entitled to 71-128ths of whatever net sum was subsequently received by the defendant in settlement of the collision matter.

A chattel mortgage carries the whole legal title to the property mortgaged to the mortgagee conditionally, and if the condition is not performed the mortgagee's title becomes absolute at law. *Stewart* v. *Hanson,* 35 Maine, 506. The only right remaining to such a mortgagor is the equity of redemption. He has no title to the property, and, therefore, has no rights in it incident to ownership. If the mortgagee permits him to have the possession and use of it, such permissive possession and use, unless otherwise agreed, does not entitle him as against the mortgagee to have the benefit of damages for wrongful injuries to the property itself. If while the property is in the permissive possession of the mortgagor it is damaged by a third party the mortgagee may recover the damages of him who is legally liable therefor. Such right in a mortgagee to recover damages for injuries to the mortgaged property is incident

to his title to the property; it does not depend upon possession, or right to present possession, of the property. The right of present possession is essential to maintain an action for an injury to the possession, but is not an essential to maintain an action for damages to the property itself. Although a mortgagor in possession may maintain trespass for an injury to his right of possession, and in such action he may be permitted to recover, by way of aggravation, damages for injuries to the property itself by the defendant's acts, yet the right to recover such damages to the property itself in such an action by the mortgagor is only incidental to his right of action for the injury to his possession. It is subordinate to the mortgagee's right to recover for the damages to the property itself. When the injury affects the estate it may be redressed in an action by him in whom the legal title to the estate is vested. Even though one who has wrongfully injured the mortgaged property itself may thus be liable to an action by the mortgagor, as well as to an action by the mortgagee, yet the principle remains the same, that the superior right of action for injuries to the estate is in the mortgagee by virtue of his title. *Gooding* v. *Shea,* 103 Mass., 360.

Applying these fundamental and familiar principles of law to the facts in the present case we think the plaintiffs' contention is not sustainable.

At the time of the collision and of the injuries thereby occasioned to the Colburn, these 71-128ths of the vessel were under mortgages, and the mortgagees thereof, having the legal title to the estate represented by those shares, had the right to receive and to recover the damages resulting from the collision to the property mortgaged. They had that right by virtue of their title to the property injured. As between them and the mortgagor their right to the damages for injuries to the mortgaged property itself was the controlling right. Had the damages been received by the agent for the vessel before the foreclosures of the mortgages were complete the mortgagees would have then been entitled to them by virtue of their title as mortgagees. And certainly they could not be less entitled to those damages by reason of the fact that when they were received by the agent their title by mortgage to the property when damaged had then become absolute under the foreclosures.

It is suggested in behalf of the plaintiffs that some portion of the amount recovered by the defendant in the compromise settlement of the collision should be regarded as compensation for the delay of the vessel, and therefore belonged to the estate of the mortgagor which then had the possession and use of the vessel. But it is a sufficient answer to that suggestion, that there is no proof that any part of the money received by the defendant was compensation for the vessel's lost time. The matter of damages for the delay of the vessel may or may not have been taken into account in the compromise. We cannot determine whether it was or not, for the evidence is silent on that point.

But there is another adequate defense we think to the plaintiffs' claim, at least so far as the 65-128ths of the vessel are involved. There is ample proof in the case of a general and universally well known and recognized usage pertaining to sales and transfers of shares in vessels, which is, that when such shares are sold and the ordinary bill of sale therefor is given without any condition or reservation, the buyer takes the shares, debits and credits, or in other words, that all debts follow the vessel, and all credits due the vessel, if any, go to the buyer. Such usage, we think, is neither contrary to established principles of law, nor repugnant to the contract of the parties, and it is not unreasonable. Indeed it seems necessary that transfers of shares in a vessel should be governed by such an usage, for it is impracticable at least, if not quite impossible, for vendor and vendee of vessel property to determine with any degree of accuracy the financial standing of the vessel at the time of the sale. Even the agent for the vessel cannot know with certainty, at all times, the extent of her debts and credits. Moreover, the lien for a maritime tort accompanies the vessel into the hands of even a bona fide purchaser. *Vanderwater* v. *Mills,* 60 U. S., 89. And the purchaser of a vessel, unless it is otherwise provided, on taking possession takes the right to all freight then accruing, and succeeds to any lien which the seller had to enforce payment of such accruing freight. *Merchant's Banking Co.* v. *Cargo of the Afton,* 143 Fed., 727. We think the usage proved was so general and so universally recognized that the parties to the sales and purchases and transfers of the shares of the Colburn involved in this case must be held to

have made those sales and purchases and transfers with reference to the usage.

Giving effect to the usage proved in considering the transfer of the 65-128ths of the vessel, by the bills of sale already mentioned. from the plaintiffs to the First National Bank of Bath, and from that bank to the defendant, which transfers were without qualification or reservation, we can entertain no doubt that the shares so sold and transferred passed to the defendant subject to debits and credits—that is, the debts against the vessel following her, and her accruing and uncollected credits going to the new owner in proportion to its ownership.

If this last mentioned defense is not fully applicable so far as the 6-128ths of the vessel may be involved, because no voluntary transfer and bill of sale thereof was made by the plaintiffs after the collision, the title to those shares having passed from the Donnell estate by the mortgage to the Peoples Safe Deposit and Savings Bank and its foreclosure, we need only add that the defense first mentioned and considered is ample.

The court is therefore of opinion that the plaintiffs are not entitled to recover.

*Judgment for defendant.*