## MILLER v. HORTMAN–SALMEN CO., Inc.

### No. 14336.

Court of Appeal of Louisiana. Orleans.

Jan. 30, 1933.

Rehearing Denied Feb. 13, 1933.

Lemle, Moreno & Lemle, of New Orleans, for appellant.

Harry M. Mayo, Jr., of New Orleans, for appellee.

HIGGINS, J.

This is an action by a mortgage creditor against the defendant as a tort-feasor to recover the sum of $300 for having demolished a Pontiac sedan automobile, upon which the plaintiff held a chattel mortgage. The damage is alleged to have resulted from a collision between the Pontiac automobile and a 1½-ton White lumber truck of the defendant on the Gentilly road on December 21, 1929, at 6:30 p. m. The petition alleges that the plaintiff is the holder and owner of a certain matured note secured by a chattel mortgage on the Pontiac sedan, on which there is a balance of $289.25, with 8 per cent. interest from October 27, 1929, until paid, and 25 per cent. attorney's fees; that he remitted that part of his claim in excess of $300 in order to give the first city court jurisdiction; that the Pontiac sedan was being driven on Gentilly road in the direction of Little Woods at a moderate rate of speed on its right side of the road; that the defendant's truck was being driven by its employee on the same roadway toward New Orleans; that the truck, without any warning, suddenly ran from its right side of the road to the left, striking the left front and left side of the Pontiac car with such force that it was completely demolished and rendered worthless and plaintiff was thereby deprived of the security for the said note; that the truck driver was at fault in not keeping the truck under proper control; that he was driving on the wrong side of the road; and that he failed to keep a proper lookout, all in violation of the city traffic ordinance, No. 7490 C. C. S.

Defendant filed an exception of no right or cause of action on the ground that the alleged right of action was vested in the owner of the Pontiac sedan and not in the mortgage creditor, and then answered, admitting the collision, but denying that plaintiff was the holder of a mortgage on the automobile and that the driver of the truck was in any way at fault. Defendant also specially pleaded that the claim for damages to the Pontiac automobile had been compromised, settled, and liquidated by the defendant with Mr. and Mrs. M. J. Sangassan, the owners of the car, in writing, on February 4, 1930, and that the said compromise settlement of the damage claim is a bar to any recovery herein by the plaintiff against the defendant.

The trial judge overruled the exception of no right or cause of action, and, on the trial on the merits, rendered judgment in favor of the defendant, dismissing the plaintiff's suit.

It was agreed in argument at the bar and in the briefs by the attorneys for both parties that the dismissal of the suit by the trial judge was the result of sustaining the special defense that the claim had been compromised.

With reference to the exception of no right or cause of action the law is clear that where one tortiously damages property on which there is an outstanding mortgage, the mortgagee, as well as the mortgagor, has a right to sue the offender for the damages sustained by him. In dealing with this subject the Supreme Court, in Plauche-Locke Securities, Inc., v. Securities Sales Co. of La., Inc., 169 La. 601, 603, 125 So. 729, stated: "The principal question in this case is whether a creditor, who holds a chattel mortgage on property belonging to an insolvent debtor, and who has no other security, has a right of action for the value of the mortgaged property against one who, being an ordinary creditor of the mortgagor, secretly and without the knowledge of either the mortgagor or mortgagee, takes the property out of the parish where the mortgage is recorded, and conceals it, and afterwards disposes of it for his own advantage, and thereby causes the mortgagee to lose his claim. The district court decided that the mortgagor had such a right of action, for tort, and the defendant has appealed from the decision."

In affirming the decision of the lower court in favor of the plaintiff, the Supreme Court in effect stated that it was unnecessary for the mortgage debtor or owner of the property to be made a party defendant and that, in addition to the right granted to the mortgage creditor under the chattel mortgage law to criminally prosecute the party who removed or concealed the mortgage property, the holder of the notes secured by the mortgage had a right to proceed independently of the mortgagor against the person who had wrongfully caused the damage to the property securing the mortgage notes. See, also, Jones on Mortgages (8th Ed.) VI., 2, par. 857-8, p. 176-7; 41 C. J., 652; articles 2315 and 2316, R. C. C.; Arnold v. Broad, 15 Colo. App. 389, 62 P. 577; Equitable Securities Co. v. Montrose & D. Canal Co., 20 Colo. App. 465, 79 P. 747; Mathews v. Silsby Bros. et al., 198 Iowa 1392,

201 N. W. 94, 37 A. L. R. 1116; Delano v. Smith, et al., 206 Mass. 365, 92 N. E. 500, 30 L. R. A. (N. S.) 474; Jeffers v. Pease et al., 74 Vt. 215, 52 A. 422.

We conclude that the trial court properly overruled the exception of no right or cause of action.

■ On the merits the record shows that three eyewitnesses to the accident testified: Mrs. Marion Sangassan, the driver of the Pontiac sedan and the wife of the owner thereof; M. M. Love, a colored man, who was driving a truck following the Pontiac sedan, both witnesses for the plaintiff; and Walter Jackson, the driver of the truck, a witness for the defendant.

The testimony of the plaintiff's witnesses is to the effect that on the evening in question, between 5:30 and 7:00 p. m., the Pontiac sedan was being driven by Mrs. Sangassan on the Gentilly road in the direction of Little Woods, at a rate of speed estimated between 18 and 25 miles an hour on its extreme right side of the roadway; that the truck was on the same roadway going toward New Orleans at a speed estimated at 15 miles an hour; that as the two vehicles approached each other and came in close proximity, estimated to be between 8 and 10 feet, the truck suddenly and without any warning ran from its right side of the road to the left, violently striking the sedan on the left front and left side, crushing the left front fender and ripping off the running board and left rear fender, and knocking the rear of the sedan off the road, so that it was on an angle of 45 degrees; that it was extremely cold and had been raining and the road was wet.

The truck driver stated that he was driving a 1½-ton White lumber truck of the defendant on the Gentilly road in the direction of New Orleans on his extreme right side of the road, at a speed of about 12 or 15 miles an hour, around 6:30 p. m. on the day in question; that it was raining and sleeting and it was very cold; that the sedan came on his side of the road and struck the left front fender and wheel of the truck and both vehicles came to a rest in such a position as to block traffic; that it was very dark and that he could see only about 20 feet in front of the truck; that he did not see which way the Pontiac car came from and was unaware of its approach until all of a sudden he heard a loud scream and a car struck the truck on the left front fender; that he did not see the Pontiac car until after the vehicles collided.

There is some testimony in the record given by another defendant witness who came upon the scene after the accident, but he was unable to state whether the cars had been moved in the interim.

From the testimony of the plaintiff and Mr. Sangassan, a defendant witness, it appears that the plaintiff had no other security for his note than the mortgage on the Pontiac sedan and that the mortgagor is practically insolvent.

We feel that the plaintiff has proven, by a preponderance of the evidence, the allegations of negligence contained in the petition, particularly in view of the fact that the truck driver admits that he did not see the Pontiac sedan until after the vehicles collided. If he was unable to see the Pontiac car approaching, and there was nothing to intercept his view, it appears to us that he would be just as unable to say whether he was traveling on the right or left side of the road.

With reference to the plea of compromise and settlement, the evidence shows that the mortgagor defaulted in the payment of the twelfth installment of his note due on October 27, 1929, and, under the acceleration clause in the chattel mortgage, the balance of the note became due and exigible; that the accident happened on December 21, 1929; that on the 4th of January, 1930, the attorney for the mortgagor made a verbal demand upon the insurance carrier of the defendant for payment of the damages and confirmed it in writing on January 6, 1930; that several days before January 11, 1929, the plaintiff notified the insurance carrier of the defendant by phone that he held a mortgage upon the damaged Pontiac car and, on January 11, 1929, confirmed the verbal notice in the form of a letter; that on February 4, 1930, the insurance carrier entered into a written contract of compromise with Mr. and Mrs. Sangassan, the mortgagor and his wife, who was injured in the collision, in full settlement for all claims for property damage to the automobile and personal injuries to Mrs. Sangassan, for the sum of $125; that on March 15, 1930, the attorney for the plaintiff wrote the insurance carrier a letter in which he stated that his client had been informed that the claim in question had been settled directly with the mortgagor alone for the damage to the car, notwithstanding the verbal and written notices given to the insurance company and the assurance of its adjuster that no payment would be made to the prejudice of the plaintiff's rights; and that on March 18, 1930, the defendant replied to the attorney's letter of March 15th stating that a compromise and settlement had been entered into with the mortgagor on the representation of the mortgagor that he very much desired to have the car repaired as soon as possible. The record shows that the car was never repaired.

The plaintiff testified that he had notified the insurance company by telephone of his interest in the Pontiac car and that the adjuster assured him that there would not be any payment to the prejudice of his rights and that he confirmed his claim as mortgage creditor in the letter of January 11, 1930, to

the defendant's insurance carrier and that thereafter neither the mortgagor nor the adjuster notified him of the proposed compromise settlement and agreement, which was entered into without his consent or knowledge.

Louis G. Lemle, one of the attorneys for the plaintiff, testified that, after receiving the insurance company's letter of March 18th, he phoned Mr. Eberhard, manager of the claims division, and asked him why he had settled the claim with the mortgagor alone, when he had been notified in writing of the mortgage creditor's rights; that Mr. Eberhard said that the reason they had handled the matter that way was because under the law they did not recognize the right of the mortgage creditor and that the insurance company was legally entitled to make settlement with the owner of the car and to disregard the mortgage creditor. The defendant did not place any witnesses on the stand to contradict the testimony of the plaintiff and Mr. Lemle.

 The general rule of law on this subject is stated in vol. 42, Corpus Juris, page 762, paragraph 269, as follows: "Either a mortgagor or mortgagee, or bailor or bailee, of a motor vehicle may maintain an action against a third person to recover damages for its injury or destruction, and a settlement by the wrongdoer with either is, in the absence of fraud or collusion, a bar to an action by the other, the amount paid or recovered being held in trust to be applied according to the respective rights of the parties."

See, also, Harris v. Seaboard Air Line R. Co., 190 N. C. 480, 130 S. E. 319, 49 A. L. R. 1452; Smith v. L. & N. R. Co., 208 Ala. 440, 94 So. 489; Oros v. Allen, 133 Wash. 268, 233 P. 314; Craig v. Lee, 81 Ind. App. 319, 142 N. E. 399; Smith v. Gufford, 36 Fla. 481, 18 So. 717, 51 Am. St. Rep. 37; Whitworth v. Jones, 58 Cal. App. 492, 209 P. 60; Wilkes v. Southern R. Co., 85 S. C. 346, 67 S. E. 292, 137 Am. St. Rep. 890, 21 Ann. Cas. 79; Donnell v. G. G. Deering Co., 115 Me. 32, 97 A. 130; Blashfield's Automobile Law, page 1515; vol. 5, R. C. L., 474; vol. 11, C. J., 598, § 300.

Counsel for defendant contends that, as the plaintiff has failed to introduce any evidence tending to show fraud or collusion on the part of the mortgagor and the insurance carrier, the compromise settlement between them is a valid defense to the present suit. Counsel for plaintiff counters by saying that he concedes it to be the general law that, in the absence of fraud or collusion, a compromise settlement between the mortgagor and wrongdoer is a bar to an action for damages to the security by a mortgage creditor, but that in the instant case the insurance carrier cannot plead good faith because the mortgage creditor had verbally and in writing notified the insurance company of his rights before the claim was compromised.

There does not appear to be any decision on

the point by any court of this state. The case of Cornwell v. Surety Fund Life Co., et al. (1924) 47 S. D. 421, 199 N. W. 126, 128, is pertinent. In that case the administrator of an estate sued an insurance company on a policy seeking to recover the proceeds thereof for the benefit of the creditors of the estate. The insurer pleaded that it had compromised and settled in writing all claims under the policy with the named beneficiary and had no knowledge of any other claimant. In upholding the plea of compromise and settlement as a bar to the plaintiff's suit the court in part said: "In the absence of any act amounting to fraud or collusion, and in the absence of notice that there are others who have a right to share in the proceeds of the policy, a compromise settlement made by the insurer and the beneficiary named in the policy should relieve the insurer from further liability on the policy."

In the recent case of Dorsey v. Metropolitan Life Ins. Co., 145 So. 304, not yet reported [in State report], we held that a life insurance company, in making settlement under the facility of payment clause, was obliged to make a reasonable investigation to determine who is equitably entitled to receive the proceeds of the policy and that if, after such investigation, the company paid one of the claimants in good faith, the settlement would be a bar to an action by any other claimant. On the merits of the case we found that, while the plaintiff had made verbal demand upon the defendant to be paid the proceeds of the policy before the company had paid the same to defendant, the plaintiff had failed, after a lapse of several days, to carry out the company's instructions to place her claim in writing. We reached the conclusion that the company had acted in good faith and was justified in believing that the plaintiff was not pressing her claim.

While the two above-cited cases are not exactly in point, they show the disposition of the courts to require insurance companies to make a reasonable investigation to determine to whom the proceeds of policies should be paid and to act in good faith in making payment. The decisions clearly indicate that the insurance company cannot ignore a claimant who is legally entitled to share in the proceeds of the policy after the company has been duly and timely notified of the rights of that party.

It is to be noted that in Plauche-Locke Securities, Inc., v. Securities Sales Co. of La., supra, it was held that the mortgage creditor had a right to bring a direct suit against a tort-feasor who had destroyed the mortgage creditor's security without the necessity of making the mortgagor or owner a party to the suit.

We can see that, where the owner of a chattel mortgage on an automobile, notwithstanding the fact that it has been properly record-

ed, fails to notify the insurance carrier of the tort-feasor of his interest in the damaged property, a compromise and settlement between the wrongdoer or his insurance carrier and the mortgagor, in good faith, might well protect the wrongdoer or his insurance carrier, against any claim for damages made by the mortgage creditor thereafter. But we do not believe that the tort-feasor or his insurance carrier has a right to ignore the claim of the mortgage creditor, after due and proper notice, and then compromise and settle the claim with the mortgage debtor alone. A compromise settlement under those circumstances, in our opinion, cannot be successfully pleaded in law or equity as a defense against the mortgage creditor by the tort-feasor or his insurance carrier. To countenance such a practice would lead to most inequitable and unfair results and would invite fraud and collusion in the settlement by compromise of such claims. For instance, an insolvent and delinquent mortgagor would be willing to compromise his claim for very much less than the actual damage to the mortgaged property because his interest or equity might be very small in comparison with that of the mortgage creditor. In the instant case the mortgage creditor held a mortgage on the Pontiac sedan in excess of $300, considering the principal of the note, interest, and attorney's fees. The market value of this second-hand car just before the collision was about $400. Therefore the mortgage creditor had a three-fourths interest or equity, while the mortgagor only had a one-fourth interest or equity in the machine.

It is our opinion that the special plea of compromise and settlement invoked by the defendant is without merit because the mortgage creditor had properly and timely notified the defendant's insurance carrier of his claim.

As to the extent of damage to the Pontiac car the record shows that it was about a year old at the time of the accident, and, as a second-hand car, had a market value of about $400; that to repair the damages would have cost in excess of $300; that if the automobile would have been properly repaired its market value as a second-hand car would then have been about $325; that the damage to the Pontiac car was so extensive that it was practically demolished, and it was sold as junk, after considerable effort to do so, for the sum of $15, which sum was credited on account of the chattel mortgage note. We, therefore, find that the damage to the plaintiff through the loss of security for his note is the full amount of its claim of $300.

For the reasons assigned it is ordered, adjudged, and decreed that the judgment of the trial court be annulled, avoided, and reversed, and it is now ordered, adjudged, and decreed that there be judgment herein in favor of Charles T. Miller, formerly doing business un-

der the name of C. T. Miller Finance Company, and against the defendant, Hortman-Salmen Co., Inc., in the full sum of $300, with legal interest from judicial demand until paid, defendant to pay the costs of both courts.

WESTERFIELD, J., absent, took no part.

Reversed.